**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,, | No. CV-10-2101-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Swissport Fueling, Inc., , | |
| Defendant. | |

Pending before the Court is Plaintiff EEOC's Expedited Motion For Extension of Time to Identify Claimants and Memorandum in Support (Second Request) (Corrected), Doc. 184.[1] To the extent that the EEOC requests that the deadline be retroactively extended for all potential claimants that motion is denied. To the extent that the motion is one to modify the deadlines on behalf of those claimants for whom the EEOC has shown good cause to modify the deadlines, the motion is granted in part and denied in part as further explained in this order.[2]

---

[1] Doc. 184 supercedes and corrects Doc. 160 which was EEOC's earlier motion to extend. The Court considered Defendant's Response to Doc. 160 as its Response to Doc. 184.

[2] Defendant's Motion to Strike Reply, or in the alternative Motion for Leave to File Sure-Reply, Doc. 198, is denied to the extent it seeks to have the EEOC's Reply stricken. It is granted to the extent that the Court permits the filing and consideration of Swissport's Sur-reply.

1    Also pending before this Court is Plaintiff EEOC's Motion For Protective Order

2    Regarding the Deposition of EEOC investigator Jae Richardson, Doc. 165, Defendant

3    Swissport's Motion to Compel, Doc. 216, and Defendant Swissport's Second Motion to

4    Compel, Doc. 217.  For the reasons stated below Plaintiff EEOC's Motion for Protective

5    Order is denied, and Investigator Richardson may be deposed by Defendant.  Plaintiff will

6    pay the court-reporter cost incurred in taking the deposition. Further, Defendant Swissport's

7    Motions To Compel, Docs. 216 and 217, are denied in part and granted in part as further

8    explained in this Order.  Pursuant to Fed. R. Civ. P.37 (5) (A), the EEOC will file with the

9    Court within five days a memorandum, not to exceed five pages, indicating why Swissport

10   should not be awarded its attorney's fees in connection with bringing Doc. 217.

11   The Court will confer with the parties concerning the necessary re-opening of

12   discovery at the status conference scheduled for May 11, 2012.

13   **A.     Motion For Extension**

14   In May 2007, two Swissport fuelers filed discrimination charges with the EEOC.  At

15   approximately the same time, the EEOC received a petition signed by approximately twenty

16   current and former employees of Swissport complaining of discrimination. During the course

17   of the EEOC's ensuing administrative investigation, and at it's request, Defendant provided

18   Plaintiff with a list of fueler employees who were potential claimants for the period back to

19   2005, along with the employees' contact information and dates of employment.

20   For the next three years the EEOC conducted its investigation and, Defendant

21   provided, at Plaintiff's request, more than 3000 documents concerning Defendant's

22   employment practices.   On June 11, 2010 the EEOC issued 18 separate letters of

23   determination finding reasonable cause against Swissport.  Those determination letters lead

24   to an unsuccessful conciliation process.  When conciliation was unsuccessful, Plaintiff filed

25   its complaint at the end of September 2010.

26   According to that complaint, since at least May 2005 Defendant Swissport has been

27   unlawfully harassing "the charging parties" -- unspecified African fuelers – because of their

28   race, national origin and/or color and created a hostile working environment. The Complaint

also alleges that since at least May 2007, Swissport has "retaliated against the Claimants for opposing the hostile work environment based on race, national origin and/or color."  And, it alleges taht since at least June 2008, the  Defendant "constructively discharged claimants because the discriminatory treatment had made the workplace intolerable." The complaint requests injunctive relief, damages and equitable relief such as back pay, reinstatement and/or front pay as well as punitive damages.

The scheduling conference was held in April seven months after Plaintiff filed its complaint.  At the scheduling conference, Plaintiff indicated that it had currently identified seventeen charging parties, apparently  made up of the same persons whose rights it had asserted in the administrative conciliation process.  It had not, however, provided a single document or any of the information as required by Fed. R. Civ. P. 26 with respect to the damages and equitable relief it was claiming on behalf of these identified claimants. Plaintiff also asserted that in addition to the seventeen identified claimants, there were the 20 additional potential claimants that had signed and submitted the petition against the Defendant back in 2007.  Plaintiff stated with respect to those twenty additional potential claimants  that "We've looked for many of them.  We've looked for all of them, and many of their addresses have changed.   There's a few that we're --we're still trying to track down."  Plaintiff thought it could reasonably locate and identify ten of them.[3]

At the scheduling conference Defendant asserted that one of two key witnesses in the defense case, Jim Vescio, had terminal cancer and Defendant needed to preserve his testimony with respect to the claims asserted by the Plaintiff.  Defendant had provided the EEOC with notice of Mr. Vescio's condition prior to the scheduling conference.

In light of the years that the EEOC had to identify claimants, and the limited time in which Mr. Vescio could be deposed regarding the claimants' assertions, Defendant requested a cutoff for adding additional claimants.  The Court granted an additional sixty days to

---

[3]  To the extent that the EEOC seeks to assert that it stated that there would be up to thirty additional potential Claimants at the pretrial conference it either misapprehends or misstates the record.

amend the complaint or add additional claimants.  It did not preclude the EEOC from adding additional claimants after that time if it could establish its own diligence in seeking to identify such claimants.  The Court noted: "Well, Im actually going to – I'm not going to allow amendment past 60 days.  So to add class members, to me, is an amendment.  You've got 60 days to find class members, unless you can tell my why, in light of the extensive period that you've already had to do that, I should give you more time."

Apparently sometime after the scheduling conference, despite the Court's order,  the EEOC determined it would cast a much wider net in seeking to discover potential claimants.  On May 24, 2011, approximately one month after the scheduling conference,  the EEOC sent out letters with information packets to 188 Swissport employees for whom Swissport had provided contact information more than three years earlier.  Further, on May 25, it sent an interrogatory to Swissport asking it to identify all of its employees who worked for the company as early as January 1, 2001 and further requesting disclosure of their race and job title.

By the deadline for amending the pleadings and identifying claimants that was set by the Court, Plaintiff had not filed an amended complaint seeking to recover for discrimination or harassment prior to May 2005, nor had it specifically identified additional claimants on whose behalf it sought relief.  On that date, Plaintiff served Defendant with additional disclosures in which it identified persons who were claimants, and persons who were "Potential Claimants."  Plaintiff had, by this time, identified nine additional claimants and an additional 75 potential claimants in their supplemental disclosure statements.  Thus, the scope of the potential claimants that Plaintiff was seeking to identify now vastly exceeded those identified at the scheduling conference.

On that same date Plaintiff also filed its Motion For Extension of Time.  Doc. 32.  The motion stated that since the setting of the schedule, the EEOC had deicded to send out letters to the 188 fuelers for which Swissport had provided it with contact information, and 103 of those letters were returned as undeliverable.  Plaintiff asserted that many of the addressees had changed addresses--not surprising if the Plaintiff had taken three years from receiving

their contact information to actually attempt to contact them-- and that many traveled for extensive periods out of the country.  Plaintiff stated that it was continuing to use public databases to attempt to find current contact information.

In that motion Plaintiff also identified that it had expanded the scope of its discovery requests to the Defendant to identify additional potential charging parties.  Plaintiff had not, however, sought to amend the complaint to assert a right to relief earlier than May 2005. Because of the expansion of its efforts to identify potential claimants, Plaintiff requested that the Court grant it until December 16, 2011 to continue to identify potential claimants.

When requesting a modification to a scheduling order, the requesting party must establish good cause for doing so.  The existence of such good cause is, as the EEOC had been advised at the scheduling conference, dependent upon its diligence.  Amendment to the scheduling order is allowed only if the good cause standard is satisfied.  *See Johnson v. Mammoth Recreation Centers, Inc.*, 975 F.2d 604 (9th Cir. 1992).  "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15."  *Id.* at 609.  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Id., citing Engleson v. Burlington, Northern R.R. Co.,*  972 F.2d 1038, 1043 (9th Cir. 1992).  If the party seeking amendment "was not diligent, the inquiry should end."  *Id.*

Not only does the EEOC offer no reason consistent with diligence why it did not earlier seek to identify such claimants since it had earlier received their contact information, it offers no reason, consistent with diligence, as to why it did not decide until after the scheduling conference that it was going to seek to identify 188 additional Claimants as opposed to the twenty that it disclosed at the scheduling conference.

In declining to rule on the motion to extend, the Court ordered:

To the extent that the identification of claimants would require the EEOC to

seek to amend its pleadings, the Court will determine at the time of the proposed amendment whether such a modification in the Scheduling Order is both justified by "good cause," see Fed. R. Civ. P. 16, and by the moving party's diligence in the matter. *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir. 1992). In the absence of any proposed motion to amend, the Court cannot determine whether the EEOC has been sufficiently diligent to justify the proposed extension. Therefore, the Court declines to rule on the EEOC's motion as unripe. To the extent that the EEOC takes the position that no amendment is necessary, the Scheduling order has a discovery deadline that will continue to govern this action. The parties are advised to cooperate to insure that all parties are timely aware of all potential claimants to ensure successful discovery within the parameters of that deadline.

The EEOC treated this order as authorization to continue to seek to add class members throughout the course of the litigation on a rolling basis by so informing the Defendant in disclosure statements, and without seeking leave of the Court to do so.

Those notices resulted in the Defendant filing its motion to limit class on October 31, 2011. In its Response, Plaintiff again made no effort to demonstrate diligence with respect to its attempts to identify individual claimants. As a result, the Court granted Defendant's motion in part, while indicating it would still allow the Plaintiff the opportunity to demonstrate such diligence and good cause:

> The Court has never deviated from its view that after that date, June 28, 2011, it would require Plaintiff to establish good cause, and thus previous diligent efforts to identify members of the class, prior to permitting Plaintiff to seek individual relief on behalf of additional members of the charging class. Frankly, the Court acknowledges that the wording of its order refusing to act on the Plaintiff's motion to amend was not as clear as it should have been. In seeking to recognize that, as a technical matter, Plaintiff might not need to amend the complaint to seek to add members of the charging class on whose behalf the Plaintiff sought individual relief, the Court did not make it precisely clear that Plaintiff nevertheless would have to establish good cause before seeking to add additional persons on whose behalf it sought relief.
>
> While recognizing that there still might be unidentified members of the class, the Court entered its previous scheduling order in light of the extensive time that Plaintiff has had to identify individuals on whose behalf it seeks relief, and the need for Defendant to have adequate time to conduct adequate discovery from those persons. In any of the motions or responses filed, Plaintiff has yet to identify or establish to this Court, individuals on whose behalf it seeks to assert relief that it had not identified prior to June 28, 2011, and any reasons approaching good cause, why those persons were not previously identified. To the extent that Plaintiff has set forth generic reasons why it should still be able to seek to identify class members, those reasons are rejected in light of the years that the Plaintiff has had to identify such class members and the failure of Plaintiff to set forth any good faith reason why such steps were not earlier taken.

Therefore, absent demonstrating "good cause" why this Court should allow Plaintiff to seek individual relief for aggrieved employees who were identified to Defendant after June 28, 2011, Plaintiff is precluded from doing so.

By the status conference held on January 20, 2012, Plaintiff asserted that it had identified an additional seven of the remaining 75 class members on whose behalf it desired to seek relief. The Court directed the Plaintiff to file a pleading by early February establishing such good cause on an individual basis.

## ANALYSIS

Despite the Court's order, in its motion for extension the EEOC nevertheless sets forth generic arguments similar, if not identical, to those that the EEOC had earlier asserted unsuccessfully. The EEOC first seems to argue that because the Court only made an oral order setting a deadline for the EEOC to disclose the claimants on whose behalf it seeks relief, it was not obliged to comply with the order. This argument plainly lacks merit. In the Ninth Circuit 'oral orders are entitled to the same force and effect as an order reduced to writing." *Lorenz v. Beltio, Ltd.,* 76 F.3d 387 (9th Cir. 1996) (citing *Noli v. CIR,* 860 F.2d 1521, 1525 (9th Cir. 1988). The EEOC did not overlook the order but was aware of at all times of the need to identify charging parties by the 28th of June as its first Motion for Extension demonstrates. See, e.g., Doc.32. ("The [case management] Order does not explicitly set forth a deadline for identification of Claimants . . . but the Court advised the parties at the April 29, 2011 Case Management Conference that it expected all Claimants to be identified by the June 28 deadline.") To the extent that Plaintiff EEOC suggests that this Court cannot set a deadline for the disclosure of claimants governed by Fed. R. Civ. P. 16, such a suggestion also lacks merit.

To the extent that the EEOC asserts that this Court abused its discretion in setting the disclosure deadline sixty days after the discovery conference it is also unpersuasive. At the scheduling conference the EEOC asserted that it knew of only approximately twenty additional potential claimants -- those who had signed the 2007 employee petition -- and that it had "looked for all of them," and that "[t]here's a few that we're --we're still trying to track

1  down." Sixty days is not an unreasonable period to track down the remaining few claimants

2  in such circumstances especially when a key defense witness as to such potential claims is

3  suffering from a terminal illness and has testimony that must be preserved, and the EEOC had

4  been given the contact information for virtually all such persons at the start of the

5  investigation three years earlier.  The EEOC could and should have determined by the point

6  of the scheduling conference which of Swissport's previous employees it wished to solicit to

7  be charging parties and been prepared to request that sufficient time be scheduled and

8  balanced into the other exigencies raised by the parties.  At that time, however, they only

9  desired to identify the twenty employee signers of the petition for whom it represented it had

10  already been looking.

11      The EEOC also asserts that it is routinely given significant time in discovery to

12  ascertain the identity of potential class members.  Yet, it fails to establish that it is awarded

13  such lengthy discovery even in cases when it has, during the administrative proceedings,

14  compelled the Defendant to disclose to it the identities and contact information of all such

15  potential class members, and has otherwise done nothing to ascertain actual claimants since

16  the time that it received that information or filed its complaint.

17      The EEOC asserts that it need not identify all persons on whose behalf it seeks

18  damages relief during its administrative investigation or conciliation procedures.  *EEOC v.*

19  *United Parcel Service,* 94 F.3d 314, 318 (7th Cir. 1996), *EEOC v. United Parcel Service,* 860

20  F.2d 372, 376 (10th Cir. 1988), *EEOC v. American National Bank,* 652 F.2d 1176, 1185 (4th

21  Cir. 1980). The Court assumes the accuracy of this legal assertion.  Even so, it is hardly

22  dispositive of whether, under *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir.

23  1992), the EEOC has demonstrated diligence in identifying charging parties on whose behalf

24  it seeks actual and equitable damages and injunctive relief in a judicial proceeding.

25      In assessing a reasonable deadline for such disclosures, and whether the EEOC has

26  been diligent in attempting to meet such a deadline, a court may take into account that

27  Plaintiff EEOC twice mandated Defendant to provide the identities and contact information

28  of all potential judicial claimants years earlier in its administrative processes.  A court may

further consider the nine months between the Plaintiff's filing of the complaint and the deadline set for the identification of claimants on whose behalf the EEOC seeks damages and injunctive relief.  It may further consider the far more limited number of potential Claimants that the Plaintiff identified that it might add at the Scheduling Conference.  None of the cases cited by Plaintiff suggest otherwise.

Prior to the deadline set by the Court for identifying claimants, the Plaintiff identified nine additional claimants on whose behalf it is seeking relief in this lawsuit.  It may seek relief on behalf of such claimants.  It now seeks to add twenty-two more.  Pursuant to Fed. R. Civ. P. 16(b) (4). It must demonstrate good cause as to each of these twenty-two.

The facts as to many of the twenty-two additional persons on whose behalf the EEOC seeks to assert claims bear certain similarities.  It is undisputed that during the EEOC's administrative investigation of Swissport first in January and then again in April 2008, Swissport provided the EEOC with the then current contact information for twenty-one of the twenty-two additional claimants, and that the contact information for the remaining potential claimant was given to the EEOC in 2007.

Approximately two weeks prior to the scheduling conference, on April 13, 2011, the EEOC supplied Swissport with a preliminary list of the twenty persons who signed the petition that it believed it would eventually identify as claimants in addition to the seventeen claimants it had already identified.  That list includes five of the twenty-two additional names on whose behalf Plaintiff now desires to seek relief apparently including Amos Tarley, Angelo Ajawin, Kweku Essien, Wellington Pyne and Charles Talati.  In that letter the EEOC also requested Swissport to voluntarily provide a list of names, addresses and phone numbers and dates of employment of fuelers employed from 2005 to 2007.

Swissport did not voluntarily supply such a list to the Plaintiff.  Compliance with such a request would have constituted the third time that Defendant would have done so.  However, given the passage of time, such a list would have contained some updated contact information

1    for eight of the twenty-two claimants on whose behalf the EEOC now seeks to assert claims.[4]

2    These include: Amos Tarley, Angelo Ajawin, Jacob Kual, Angelo Ring,  Salah Ahmed,

3    Abdirahman Mumin, Koami Kromega, and Charles R. Talati.  Because Swissport desired to

4    quickly identify the claimants so that Mr. Vescio's testimony could be preserved with respect

5    to them, it would have been reasonable for Swissport to assist in identifying such potential

6    claimants on request.  Swissport was served by the EEOC with a formal request for the

7    information in May.  After it received a mutual extension from the EEOC it apparently

8    disclosed this updated contact information in July 2011 .  While, under the circumstances,

9    Swissport's determination not to voluntarily provide updated contact information does not

10   demonstrate bad faith, the Court is unwilling to find that to the extent the EEOC was making

11   diligent efforts to locate such persons without such direct and efficient assistance, it should

12   not result in a windfall to Swissport.  This reasoning has particular force when, as was the

13   case here, Swissport sought an accelerated date for identifying claimants in part, due to the

14   precarious health of a key witness.

15        The EEOC was ordered on April 29, 2011 to identify all parties on whose behalf it

16   would seek relief by June, 28, 2011.  The EEOC arrived at the decision sometime after the

17   scheduling conference to attempt to identify all of the past qualified employees identified by

18   Swissport in the EEOC administrative proceedings as claimants in this lawsuit as opposed to

19   merely the signers of the 2007 employee petition. Beginning approximately four weeks later,

20   between May 24, and June 11, 2011, the EEOC  mailed out a notice of litigation letter,

21   questionnaire and participation agreements to 188 potential claimants.  These letters were

22   apparently sent to the last known address of the potential claimants that the EEOC had earlier

23   received from Swissport in connection with its administrative investigation in 2008 and

---

[4] Fourteen of the twenty-two additional charging parties left Swissport's employ prior to their previous disclosure of the list to the EEOC in April 2008.  These employees include Wellington Pyne, David Mensah, Kweku Essien, Sualiman Kargbo, Sumene Daborloomene, John Dan-Kane, John Ruai, Friday Ikue, Peter Adjei, Anthony Nwiyaara, Ebenezer Sitam, Muritala Usuf, Yasir Hamid, Doctor Clemente Joule Dador.

1   included twenty-one of the twenty-two people on whose behalf the EEOC now wishes to

2   assert claims.[5]

3            There is no reason that the EEOC could not have earlier made the determination as

4   to the number of potential claimants it sought to represent and proceeded to identify those

5   claimants either during the administrative process or after it filed its complaint. This Court is

6   aware as the EEOC points out, that to the extent that the EEOC was not diligent in pursuing

7   the identity of the claimants, it is the claimants themselves and not the EEOC who lose their

8   opportunity to assert their claims.  Nevertheless, the EEOC's lack of diligence cannot always

9   be excused just because it harms others who might have had a claim for relief, but did not

10  independently assert it.   Such deprivation must be balanced against the fairness and

11  expediency that is due to the parties against whom the EEOC asserts such claims.  The EEOC

12  can reasonably be expected to consider the scope of its claims by the time of the scheduling

13  conference.  It is, after all, the diligence of the party, in this case the EEOC, that is at issue

14  when deciding whether to adjust deadlines previously set under Fed. R. Civ. P. 16, and not

15  the diligence of those who rely on the party to assert their claims for relief.

16           In balancing these two interests, the Court has determined that the most important

17  facts to consider is whether the EEOC was diligent and consistent in seeking  to identify

18  charging parties once this Court set a deadline to identify charging parties.  While it did not

19  begin sending out information letters to such potential charging parties until May 24, the

20  Court does not consider this alone sufficient to establish a lack of diligence and deny the

21  extension of a deadline to all potential claimants.  Nevertheless, to the extent the EEOC failed

22  to demonstrate continued diligence in seeking to identify charging parties in this suit after the

23  deadline had expired, given their past opportunity to identify the claimants over a three year

24  period, the Court will not modify its schedule to permit the claim of the proposed charging

25  party.

26

27  _____

28      [5]No such packet of materials was sent to Angelo Ajawin during this period although
    a packet was later sent to him.

### 1. Amos Tarley

Mr. Tarley had been earlier disclosed on April 13, by the EEOC as a potential claimant, and, at the time, Mr. Tarley remained in the employ of Swissport. Thus, Swissport was aware of his whereabouts, but, apparently, did not disclose them to the EEOC. After sending the packet of materials to Amos Tarley on May 24 to the address previously provided by Swissport, the EEOC continued to search for him by using public databases and attempting to telephone him. The EEOC thus listed Mr. Tarley as a potential claimant in its June 28 disclosure statement. On June 30, 2011 the EEOC was able to contact Mr. Tarley by telephone and confirmed with him that he wished to be a claimant. They notified Swissport that he was a claimant on that same date. Plaintiff has established sufficient diligence to permit the modification of the scheduling order to allow it to assert the claims of Amos Tarley.

### 2. Angelo Ajawin

Mr. Ajawin had been earlier disclosed on April 13, 2011 by the EEOC as a potential claimant, and, had remained in the employ of Swissport until 2009. Swissport thus, presumably, had updated contact information concerning Mr. Ajawin that it did not provide to the EEOC until after the deadline. The EEOC first sent the packet of materials to Mr. Ajawin on June 17. Mr. Ajawin replied by mail. The EEOC conferred with Mr. Ajawin on or before July 5 and identified Mr. Ajawin to Swissport as a claimant on the next day. Plaintiff has established sufficient diligence to permit the modification of the scheduling order to permit it to assert the claims of Angelo Ajawin.

### 3. Wellington Pyne

After sending the packet of materials to Wellington Pyne on May 25, the EEOC listed him as a potential claimant in its June 28 disclosure statement and continued to search for him by using public databases. With information obtained on such databases it sent a follow-up letter on July 5 and was successful in contacting Mr. Pyne by phone on July 7. Mr. Pyne had been earlier disclosed on April 13, by the EEOC as a potential claimant. On July 8, the EEOC was able to confirm with him that he wished to be a claimant. They so notified Swissport on

1  that same date. Plaintiff has established sufficient diligence to permit the modification of the
2  scheduling order to permit the claims of Wellington Pyne.

3       **4. Jacob Kual.**

4       Mr. Kual remained in the employ of Swissport, and thus Swissport had updated
5  information about his whereabouts, but, apparently, did not disclose it to the EEOC, prior to
6  the deadline. When Mr. Kual did not respond to the informational letter, the EEOC conducted
7  a public records search to locate the address of Mr. Kual on July 5.  On that  date it sent him
8  an information packet.  The EEOC unsuccessfully attempted to reach Mr. Kual by phone on
9  July 6.  The EEOC reached Mr. Kual by phone on July 11 and he indicated he wished to have
10 the EEOC assert claims on his behalf.  The EEOC so notified Swissport on that same date.
11 It has established sufficient diligence to permit the modification of the scheduling order to
12 permit the claims of Jacob Kual.

13      **5. David Mensah**

14      After sending the packet of materials to David Mensah on May 24, the EEOC
15 continued to conduct public record searches for him and sent two letters to potential addresses
16 on June 17, 2011.  The EEOC also attempted tor each Mr. Mensah by phone and was able to
17 reach him on July 7.  He thereafter came in and spoke with the EEOC in person.  The EEOC
18 notified Swissport on July 14 that Mensah would be a claimant. Plaintiff has established
19 sufficient diligence to permit the modification of the scheduling order to permit the claims of
20 David Mensah.

21      **6. Kweku Essien**

22      Mr. Essien had been earlier disclosed on April 13, 2011 by the EEOC as a potential
23 claimant.  After sending the packet of materials to Kweku Essien on May 24, to the address
24 previously provided by Swissport, the EEOC continued to search for him by using public
25 databases and sent him another letter on July 5.  The EEOC received a written response from
26 Mr. Essien on July 11, and spoke to him on July 14.  The EEOC notified Swissport of
27 Essien's claimant status on that same date.  Plaintiff has established sufficient diligence to
28 permit the modification of the scheduling order to permit the claims of Kweku Essien.

### 7.  Sulaiman Kargbo

After sending the packet of materials to Sulaiman Kargbo on May 24, the EEOC continued to conduct public record searches for him and sent another letter to a potential address on July 5, 2011.  The EEOC received Mr. Kargbo's response on July 11, 2011 indicating that he wished to be a claimant.   The EEOC notified Swissport on July 18 that Kargbo would be a claimant. Plaintiff has established sufficient diligence to permit the modification of the scheduling order to permit the claims of Sulaiman Kargbo.

### 8.  Sumene Kaborloomene
### John Dan-Kane
### Friday Ikue
### Anthony Nwiyaara
### Muritala Yusuf

There appears to be no dispute that five of the claims are asserted for periods outside of the time parameters of the complaint.  The EEOC makes no argument that it has ever amended its original complaint in this action pursuant to the deadline for amendments set forth by the Court.  The complaint seeks relief as far back as May 2005.  The EEOC asserts that because the complaint states "since at least May 2005" as its earliest date, the complaint covers an unlimited period prior to that date.  This argument is unpersuasive and would not permit the parties to define claims or marshal defenses for such claims based on the limitations period set by the statute itself.  42 U.S.C. § 2000e-5(e)(1).

The EEOC was  able, had it wished to do so, to amend the complaint to specify for what earlier periods it was seeking relief.  It was aware of its obligation to do so.  It offers no explanation how its failure to do so was consistent with its diligence.  Plaintiff's failure to otherwise amend the complaint pursuant to the deadline demonstrates that it did not act with diligence sufficient to now seek relief on behalf of the five potential claimants above named. It will, therefore, not be able to seek relief on behalf of Friday Ikue, Anthony Nwiyaara, Sumene Kaborloomene, Muritala Yusuf and John Dan-Kane.

### 9.  John Ruai

After sending the packet of materials to John Ruai on May 24, the EEOC continued to search for him and sent two letters to potential addresses on July 6, 2011.  Using a phone

1  number from a public records search, the EEOC successfully contacted Mr. Ruai on July 18,
2  2011 and confirmed that he wished to assert claims. The EEOC notified Swissport on July
3  20 that Ruai would be a claimant. Plaintiff has established sufficient diligence to permit the
4  modification of the scheduling order to permit the claims of John Ruai.

5  **10.  Angelo Ring**

6  Mr. Ring had been earlier disclosed on April 13, by the EEOC as a potential claimant,
7  and, at the time, Mr. Ring remained in the employ of Swissport. Thus, Swissport was aware
8  of his whereabouts, but, apparently, did not disclose them to the EEOC. After sending the
9  packet of materials to Mr. Ring on June 6 to the address previously provided by Swissport,
10 which was apparently the correct address, the EEOC continued to search for him by using
11 public databases and attempting to telephone him. The EEOC thus listed Mr. Ring as a
12 potential claimant in its June 28 disclosure statement. On July 7, 2011, the EEOC called Mr.
13 Ring at a telephone number found in a public records search and left a message. On July 14,
14 2011, Mr. Ring returned the call. On a return call from the EEOC on that date the EEOC
15 confirmed with him that he wished to be a claimant. They notified Swissport of that status
16 on July 20, 2011. Plaintiff has established sufficient diligence to permit the modification of
17 the scheduling order to permit the claims of Angelo Ring.

18 **11.  Salah Ahmed**

19 Mr. Ahmed had been earlier disclosed on April 13, by the EEOC as a potential
20 claimant. After sending the packet of materials to Salah Ahmed on May 24, the EEOC
21 continued to search for him and sent Mr. Ahmed a second letter to a potential address on June
22 28, 2011. Using a phone number from a public records search, the EEOC successfully
23 contacted Mr. Ahmed on July 20, 2011. The EEOC notified Swissport on July 27 that Mr.
24 Ahemd would be a claimant. Plaintiff has established sufficient diligence to permit the
25 modification of the scheduling order to permit the claims of Salah Ahmed.

26 **12.  Peter Adjej**

27 After sending the packet of materials to Peter Adjej on May 24, the EEOC continued
28 to search for him and sent a second letter to him at a different address on June 28, 2011.

Using a phone number from a public records search, the EEOC successfully contacted Mr. Adjej on July 20, 2011.  The EEOC notified Swissport on July 27 that Mr. Adjej would be a claimant. Plaintiff has established sufficient diligence to permit the modification of the scheduling order to permit the claims of Peter Adjej.

### 13. Abdirahman Mumin

Mr. Mumin had been earlier disclosed on April 13, by the EEOC as a potential claimant. After sending the packet of materials to Adirahman Mumin on May 24, the EEOC continued to search for him and sent a second letter to him at a different address on July 5, 2011. Mr. Mumin responded on July 25, 2011 and the EEOC interviewed him on July 27, 2011.  The EEOC notified Swissport on July 28 that Mr. Muhmin would be a claimant. Plaintiff has established sufficient diligence to permit the modification of the scheduling order to permit the claims of Abdirahman Mumin.

### 14. Ebenezer Sitam

The EEOC provides no facts concerning its attempts to contact Mr. Sitam in the affidavit of Rosanne T. Wood.  It merely repeats, through what appears to be a copy and paste error, the averments pertaining to Anthony Nwiyaara.  The Court will grant five judicial days after the filing of this order to permit the EEOC to assert facts that it believes establish its diligence in trying to contact Mr. Sitam.  In the absence of such a filing, the EEOC will have failed to establish its diligence in contacting Mr. Sitam and the EEOC will not be allowed to pursue relief on his behalf.  Should the EEOC provide such information in a timely fashion, the Court will evalute it to determine whether it constitutes good faith.

### 15. Koami Kromega

Mr. Kromega had been earlier disclosed on April 13, 2011 by the EEOC as a potential claimant.  After the EEOC sent an information packet on May 24, 2011, it sent Mr. Kromega an addition letter on July 6, 2011 to a different address in Glendale.  The next effort made by the EEOC with respect to Mr. Kromega was October 31 when it was able to contact him by telephone.  The EEOC did not identify Mr. Kromega as a claimant to Swissport until November 23, 2011.  The EEOC offers no evidence of any attempt to locate or contact Mr.

1 Kromega from July 6, (already after the deadline), until October 31. This almost four months
2 delay after the deadline had passed and while available discovery time was being exhausted
3 does not, in the Court's assessment, constitute diligent effort to identify Mr. Kromega after
4 the deadline had passed. Having failed to establish its diligence in attempting to contact Mr.
5 Kromega after July 6, 2011, the EEOC will not be able to seek relief on his behalf.

6 **16. Yasir Hamid**

7 After the EEOC sent an information packet on May 24, 2011, it sent Mr. Hamid an
8 addition letter on July 6, 2011 to a different address in Phoenix. The next effort made by the
9 EEOC with respect to Mr. Hamid was October 31 when it was able to contact him by
10 telephone after determining his number through a public database. The EEOC did not identify
11 Mr. Hamid as a claimant until November 23, 2011. The EEOC offers no attempt to locate or
12 contact Mr. Hamid from July 6, (already after the deadline), until October 31. For the reasons
13 set forth above, this almost four-month delay does not constitute diligent effort to identify
14 Mr. Hamid. Having failed to establish its diligence in attempting to contact Mr. Hamid after
15 July 6, 2011, the EEOC will not be able to seek relief on his behalf.

16 **17. Doctor Clemente Joule Dado**

17 After the EEOC sent an information packet on May 24, 2011, it sent Mr. Dado an
18 additional letter on July 5, 2011. The EEOC lists no additional efforts that it made to contact
19 Mr. Dado. Although the EEOC offers hearsay testimony that Mr. Dado traveled between
20 New York and Phoenix in this period and had communications barriers with the brother who
21 received his mail, the relevant inquiry is not whether there is an excuse for Mr. Dado's
22 tardiness, but rather whether the EEOC acted with diligence. The EEOC indicates no effort
23 to locate or contact Mr. Dado from July 5, (already after the deadline) until it received his
24 written correspondence on October 25. This almost four months delay after the deadline had
25 passed does not constitute diligent effort by the EEOC to identify Mr. Dado after the deadline
26 had passed. Having failed to establish its diligence in attempting to contact Mr. Dado after
27 July 5, 2011, the EEOC will not be able to seek relief on his behalf.

28 **18. Charles Talati**

1    Mr. Talati had been earlier disclosed on April 13, by the EEOC as a potential
2    claimant, and, at the time, Mr. Talati remained in the employ of Swissport.  Thus, Swissport
3    was aware of his whereabouts, but, apparently, did not disclose them to the EEOC until July
4    25 when it responded to the EEOC's interrogatory.  After sending the packet of materials to
5    Charles Talati on May 24, the EEOC indicates it sent him another letter on July 6 at an
6    address in Phoenix.  Thereafter, it states without indicating when, that "it attempted to reach
7    Mr. Talati by telephone."  The EEOC finally sent Mr. Talati a third letter on November 15,
8    2011 which was also returned as undeliverable.  The EEOC then called Mr. Talati on January
9    11 and received a return call from Mr. Talati on January 12.  The EEOC subsequently
10   identified Mr. Talati as a claimant on February 2, 2012.  The EEOC offers no specific
11   attempts to locate or contact Mr. Hamid from July 6, (already after the deadline), until
12   November 15.  This delay after the EEOC would have presumably been made aware of Mr.
13   Talati's contact information, followed by an additional two month delay between November
14   and January while available discovery time was being exhausted does not, in the Court's
15   assessment, constitute diligent effort to identify Mr. Talati after the deadline had passed.  Mr.
16   Talati was not identified by the EEOC as a claimant until well after even the retroactive
17   identification deadline that the EEOC would have this court impose.  Having failed to
18   establish its diligence in attempting to contact Mr. Talati after July 6, 2011, the EEOC will
19   not be able to seek relief on his behalf.

20   **B.      Motion For Protective Order and For Sanctions**

21       After Defendant took its 30(b)(6) deposition, on December 14, 2011 both parties
22   simultaneously moved for relief.  Defendant moved for sanctions, Doc. 164, and an order to
23   compel Plaintiff to provide a knowledgeable and prepared deponent.  To that end Defendant
24   noticed the deposition of Jae Richardson, who was apparently the principal investigator with
25   the EEOC on the administrative charges.  Plaintiff immediately thereafter moved for a
26   protective order to prevent the deposition.  Doc. 165.  The Court opted to treat Defendant's
27   Motion for Sanctions as a Response to the Motion for Protective Order, and to allow
28   Defendant's to supplement that Response.  See Doc. 180.  After review the Court now rules

as follows:

It is clear to the Court after a review of the 30(b)(6) notice and the deposition testimony provided that Berta Echeveste was not an adequately knowledgeable or prepared witness for the areas of testimony designated in the 30(b)(6) deposition notice.  Although she was able to provide some answers, she did not have adequate knowledge, familiarity or preparation in many of the areas of inquiry to adequately respond.  Therefore, contrary to the position taken by the Plaintiff, Ms. Richardson's deposition would be neither cumulative, nor has Swissport had a reasonable opportunity to otherwise obtain the evidence.

To assert that the adequacy of an EEOC investigation is not an appropriate subject on which testimony can be introduced at trial, the EEOC cites to cases from different circuits which, for the most part, do not allow consider relevant matters concerning the adequacy of an EEOC investigation.  Nevertheless, the Ninth Circuit explicitly provides for inquiry into the adequacy of EEOC investigations.  See, *Plummer v. Western Int'l Hotels, Co., Inc.,* 656 F.2d 502, 505 (9th Cir. 1981) (observing that because the EEOC findings are admissible at trial the Defendant is "free to present evidence refuting the findings of the EEOC and may point out deficiencies in the EEOC determination");  *See also, Ex Rel. Goddard v. Frito Lay, Inc.,* 273 F.R.D. 545, 552 (D. Ariz. 2011) (same).  Thus, the EEOC's argument that the law is otherwise lacks merit in this circuit at least.

The Court is further unpersuaded by the EEOC's argument that it would be unduly burdensome to permit the investigation of Jae Richardson.  Therefore, the EEOC's Motion for Protective Order is denied, and the Defendant's Motion for Sanctions is granted to the extent that Ms. Richardson may be deposed and the EEOC will be obliged to pay the court reporting expenses incurred in the deposition of Ms. Richardson.

**C.  Defendant's First Motion To Compel, Doc. 216**

Defendant also moves to compel:

1. All May 24, 2011 "Notice of Class Litigation" letters that the EEOC sent to non-claimants, and a list of individuals to whom these letters were sent.

2. All Participation Agreements that were returned to the EEOC from any individuals

1   who are not current claimants in this litigation.

2        3.  All Questionnaires that were returned to the EEOC from any individuals who are

3   not current claimants in this litigation.

4        4.  Tax returns for any claimants for whom the EEOC seeks lost wage recovery, or,

5   if unavailable, documentation showing all efforts to seek such tax returns from the IRS

6        5.  Information regarding claimants' travel out of the country from January 1, 2003

7   to present.

## 1.      Identities of Potential Claimants Provided With Notice

9        At the time the May 24, 2011 letters were sent, this matter had been in litigation for

10  nine months.  And, as related above, the EEOC counsel apparently decided to pursue a

11  broader class of claimants than it had earlier identified in the scheduling conference.  The

12  notice letter was signed by EEOC counsel and was sent with a packet containing a

13  Questionnaire and a Participation Agreement.  Although the contents of the Notice,

14  Participation Agreement and Questionnaire as drafted by the Plaintiff's attorneys are not

15  subject to the attorney-client privilege to the extent that the material was sent to those who

16  were not clients and did not qualify as clients, any privilege or immunity in the text of the

17  document has been waived to the extent that the documents has already been disclosed by the

18  EEOC.  However, Plaintiff is entitled to work-product immunity to the extent that Defendant

19  requests that it identify to whom its attorneys sent the information.  *EEOC v.*

20  *Collegeville/Imagineering Ent.,* no. CV-05-3033-PHX-DGC, 2007 WL 1089712, at *1 (D.

21  Ariz. Apr. 10, 2007) (holding that "where a party . . . seeks to learn who has been contacted

22  by opposing counsel, work product concerns arise.  Such discovery requests seek to track the

23  steps of opposing counsel . . . [and thus focuses] on the actions of lawyers rather than the

24  knowledge of witnesses."); *see also Commonwealth of Mass. v. First Nat'l Supermarkets,*

25  *Inc.,* 112 F.R.D. 149, 152 (D. Mass. 1986).  The decision to contact additional possible

26  claimants, and the further decision of who among the possible candidates to contact, involves,

27  at this stage of the litigation, the mental impression of Plaintiff's attorneys.  To the extent that

28  Defendants attempt to trace the work of Plaintiff's counsel in impeaching the claims asserted

by Plaintiff as a result of the number of people contacted by Plaintiff's counsel who did not become claimants, Defendant is attempting to profit from work undertaken by Plaintiff's counsel.  Such information is subject to the work-product immunity.  As a result, Plaintiff need not identify the persons to whom it sent class notification letters.

### 2.     Participation Agreements and Questionnaires

Further, those who signed the Participation Agreement and returned it to the Plaintiff, had, by the terms of the Participation Agreement itself, an expectation of privacy in a communication with an attorney representing their interests and evaluating their potential claims.  Such communications are thus subject to the attorney-client privilege.  *Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.,* 201 F.R.D. 465, 468 (D. Ariz. 2001).  Those who returned the questionnaire along with the Participation Agreement sufficiently indicated that they wished to have their interests represented by the EEOC and thus would have had an objectively reasonable belief that they were speaking to counsel.  In such cases, the communication is protected by the attorney-client privilege.

*EEOC v. ABM Industries,* 261 F.R.D. 503 (E.D. Ca. 2009) is distinguishable because in that case, the Court noted "the EEOC has not demonstrated that the persons who filled out and returned the questionnaires were seeking to become EEOC clients at the time they completed the document. . ."  While this observation also  remains true in this case for those who returned the questionnaire without returning a signed Participation Agreement, for those who did fill out and return the Participation Agreement with the questionnaire, the EEOC has adequately demonstrated that such persons were seeking to become EEOC clients.

In sum, then, the EEOC must disclose the contents of the questionnaires that were returned without Participation Agreements or that were returned with Participation Agreements if the respondent indicated that he/she did not wish to assert a claim.  It need not return Participation Agreements or questionnaires returned with Participation Agreements, when the respondent indicated that he or she wished the EEOC to assert a claim on his or her behalf.  Further, the EEOC need not disclose the persons to whom it sent out the notice, participation agreement and/or questionnaire.

1           **3.**     **Tax returns and Other Documents**

2       The EEOC shall provide tax returns, and W-2s for years in which tax returns have not

3 yet been filed, for all claimants on whose behalf the EEOC seeks back wage recovery. To the

4 extent that the Court has permitted the EEOC to assert additional claims on behalf of new

5 claimants in this order, or previous claimants had not yet received complete tax returns from

6 the IRS, discovery shall be reopened to allow the Defendants to obtain such tax returns. To

7 the extent that the EEOC has such tax returns for claimants in its possession, it shall

8 immediately provide them to the Defendants.

9           **4.**     **Out-of-Country Travel Information**

10       The EEOC shall provide the requested information regarding claimants' travel out of

11 the country from January 1, 2003 to present. To the extent that the Court has permitted the

12 EEOC to assert additional claims on behalf of new claimants in this order, discovery shall be

13 reopened to allow the Defendants to obtain such tax information concerning the claimants.

14 To the extent that the EEOC has such information for claimants in its possession, it shall

15 immediately provide such information to the Defendants.

16 **D.**     **Defendant's Second Motion to Compel, Doc. No. 217**

17       Defendant's second motion to compel relates to documents withheld by the EEOC

18 pursuant to the deliberative process privilege. Swissport's motion lays out a detailed history

19 as to its concern that the EEOC has over-asserted the privilege. The motion further sets out

20 the extent of the deliberative process privilege, and requests that the Court review EEOC's

21 privilege log to determine compliance.

22       It is the agency's "burden to submit specific information identifying each document

23 and its contents, so that the court, in looking at the list of documents, can understand the basis

24 on which the privilege is asserted. The [agency] will not be allowed to shift its burden onto

25 the court by submitting all the documents for inspection *in camera* without more. Such a

26 procedure would 'force[] courts to become mindreaders--to discern without guidance what

27 privilege claims an agency is asserting, the reasons for those claims, and then using those

28 assumption to determine whether the documents may be justifiably withheld.'" *Resolution*

1  *Trust Corp. v. Diamond,* 137 F.R.D. 634, 642 (S.D.N.Y. 1991) *quoting Mobil Oil Corp. V.*
2  *Department of Energy,* 102 F.R.D. 1, 6 (N.D.N.Y 1983).

3         Further, the claim of deliberative due process privilege must be raised by a formal
4  claim made by the head of the agency after she has personally considered the material in
5  question prior to the invocation of the privilege. "[S]he does so by submitting a declaration
6  stating the precise reasons for reserving the confidentiality of the investigative report and
7  identifying and describing the documents to which the privilege is asserted." *EEOC v.*
8  *Peoplemark, Inc.,* 2010 U.S. Dist. LEXIS 17526 at *3 (W.D.Mich. Feb 26, 2010).  In this
9  case, the proferred declaration is deficient.  It is, as Defendant notes, conclusory.  Further, it
10 fails to assert with precision the reason why each document is subject to the asserted privilege.
11 As a result, in evaluating the applicability of the privilege the Court is left without the benefit
12 of context necessary with respect to many documents, to determine whether they are in fact,
13 deliberative.

14        In this case the EEOC does, however, divide the withheld documents into five general
15 categories that it asserts demonstrate the existence of the privilege.  The first of these
16 categories is investigator notes and communications reflecting mental impressions, analysis
17 and/ or investigative method.

18              **1.    Investigation Notes, Mental Impressions and Analysis**

19  The EEOC broadly asserts that, as a general matter, notes of meetings are subject to the
20 deliberative process privilege. *Nulankeyutmonen Nkihtaqmikon v. Bureau of Indian Affairs,*
21 493 F. Supp. 2d 91, 107 (D. Maine 2007), *quoting Baker & Hostetler LLP v. U.S. Dep't of*
22 *Commerce,* 473 F.3d 312, 321 (D.C. Cir. 2006).   Nevertheless, merely because an
23 investigator's notes are at issue does not justify the assertion of privilege, unless there is a
24 sufficient connection between the notes and the agency's deliberative process.  The privilege
25 is not categorically applicable to all investigative notes in this Circuit.

26        To qualify for the privilege, "a document must be *both* (1) 'predecisional' or
27 antecedent to the adoption of agency policy, and (2) 'deliberative,' meaning 'it must actually
28 be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n v. United*

1   *States Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir. 1988) *quoting Jordan v. United States*

2   *Department of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978).  "Factual material that does not

3   reveal the deliberative process is not protected by this exemption."  *Nat'l Wildlife* at 1117,

4   *quoting Paisley v. CIA,* 712 F. 2d 686, 698 (D.C. Cir. 1983).  However, "even if the content

5   of a document is factual, if disclosure of the document would expose 'the decision-making

6   process itself' to public scrutiny by revealing the agency's "evaluation and analysis of the

7   multitudinous facts," the document would nonetheless be exempt from disclosure."  *Id.*

8          "Under such a 'process-oriented' inquiry, 'a report does not become part of the

9   deliberative process simply because it contains only those facts which the person making the

10  report thinks material."  *Id. quoting Playboy Enterprises, Inc. v. Department of Justice,* 677

11  F.2d 931, 935 (D.C. Cir. 1982).  Nevertheless, "[w]here either the disclosure of the manner

12  of selecting or presenting facts would expose the deliberative process, or where facts are

13  'inextricably intertwined' with 'policy making processes,' the material is [subject to the

14  privilege]."  *Id. quoting Ryan,* 617 F.2d at 790.

15         The EEOC asserts a privilege in all notes of investigators because they either reflect

16  the investigators' mental impressions, analysis or investigative method.  Many of the authors

17  of such notes are unknown as are the dates on which the notes are written, and the topic,

18  otherwise unclear, is unidentified.  Where the EEOC fails to specify the note's author, the date

19  on which it was written, its subject, and the date and identity of the "decision" or policy that

20  it preceded and pursuant to which it was prepared, the EEOC has not met its burden of

21  establishing that the communication was either pre-decisional or deliberative.  Thus with

22  respect to such documents the EEOC has failed to establish the applicability of the privilege

23  and the documents must be disclosed.

24         Further, as the Ninth Circuit set forth in *National Wildlife,* 'a report does not become

25  part of the deliberative process simply because it contains only those facts which the person

26  making the report thinks material."  *Id. quoting Playboy Enterprises,* 677 F.2d at  935. To the

27  extent that the investigator notes, whether otherwise identified or not, only set forth facts

28  which the person making the note thinks material, and they do not expose the deliberative

1   process by which policy or decisions are made, or are not otherwise "inextricably-
2   intertwined" with it, the privilege is not appropriately invoked.

3        "The exercise of judgment in the formulation of a factual statement is not sufficient
4   to lift it to the level of deliberation." *Resolution Trust,* 137 F.R.D. at 641, *quoting Playboy*
5   *Enterprises,* 677 F.2d at 935. Thus, while an investigator may have mental impressions about
6   which facts are important to discern, or about how to approach a particular witness, or what
7   questions to ask a particular witness, such concerns are more related to the discovery of facts
8   than they are to the deliberative process leading to a policy or ultimate agency decision.
9   While hopefully administrative policies or decisions ultimately rely on factual determinations,
10  factual investigations, without more, are not as a generic matter "inextricably-intertwined"
11  with the deliberative process that results in an agency decision or policy in a way that protects
12  factual investigations in general pursuant to the privilege. Apart from generally noting that
13  the document relates to an investigator's mental process, analysis or methods, Plaintiff does
14  not specify how any particular document meets the necessary requirements to be sufficiently
15  related to the deliberative process that ultimately results in the agency decision. This Court
16  declines to parse the documents on its own to determine, based on its limited scope of
17  knowledge of the facts of this case, which documents might have some text that arguably
18  qualifies and which do not. To construe the privilege as broadly as Plaintiff does here would
19  be to permit the limited privilege to swallow the general objection to produce the evidence.

20       Upon its review of the documents, however, the Court concludes that with respect to
21  the investigation notes that the EEOC has identified as "analyzing information that had been
22  obtained," (Exhibit 1 to EEOC's Response, Privilege Log Exhibit A Lines 374-79, 381, 382-
23  88, 405), it has appropriately invoked the deliberative process privilege. Those documents
24  to a greater or lesser degree do actually expose agency deliberations that lead to a charging
25  decision. Therefore, of those documents designated by the EEOC as privileged because they
26  were Investigator Notes and Communications, the documents at line numbers 374-79, 381-88
27  and 405 are protected by the privilege. All other documents must be disclosed.

28            **2.**    **Draft Documents**

1    Plaintiff identifies seven privilege log line number documents that it asserts are "draft
2   documents" that fall under the protection of the privilege.  The Ninth Circuit has noted that
3   "the deliberative process privilege has been held to cover all 'recommendations, draft
4   documents, proposals, suggestions and other subjective documents which reflect the personal
5   opinions of the writer rather than the policy of the agency' as well as documents which would
6   'inaccurately reflect or prematurely disclose the views of the agency."  *Nat'l Wildlife,* 861
7   F.2d at 1119, *quoting Coastal States Gas Corp v. Department of Energy,* 617 F.2d 854, 866
8   (D.C. Cir. 1980).  Nevertheless, merely because the document is a draft does not make it one
9   that is actually sufficiently "related to the process by which policies are formulated'" to be
10  subject to the privilege.  *Nat'l Wildlife*, 861 F.2d at 1117, *quoting Jordan v. United States*
11  *Department of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978).

12          Upon its review the Court finds that the EEOC has appropriately invoked the privilege
13  with respect to three of the documents – those listed at line numbers 290, 293, 294.  Those
14  documents are draft conciliation proposal letters by the Commission.  The text of a
15  conciliation proposal letter sufficiently constitutes an agency decision so that a draft of the
16  letter is subject to the protection of the privilege.

17          However, the EEOC also seeks to  withhold four other documents that are not, subject
18  to the privilege.  Two of the documents, lines 366 and 373, though also draft letters, are draft
19  requests to Swissport's counsel for additional information.  Mere requests for information
20  from the party under investigation do not constitute documents that are sufficiently related to
21  a deliberative process resulting in a "decision or policy" of the agency.  They are, as is
22  discussed above, informational requests.

23          Documents 279 and 283 are also drafts.  Nevertheless, they are drafts of charges of
24  discrimination for persons who may or may not have filed such charges with the EEOC.
25  While the EEOC or its investigators may have drafted such documents for the consideration
26  of the putative charging party, the decision regarding whether to revise, file, accept or reject
27  the draft belongs to the charging party and not the agency.  Thus the draft document is not
28  protected by the deliberative process privilege belonging to the agency because it is not the

draft of a document that represents a decision or policy that the agency has the authority to make.

Therefore with respect to those documents designated by the EEOC as privileged because they were drafts, the documents at line numbers 290, 293 and 294 are protected by the privilege.  All other documents must be disclosed.

### 3.   Data Searches

Plaintiff identifies four privilege log line number documents, documents 174, 228, 229 and 230,  that it asserts are "data searches" that, fall under the protection of the privilege.  The Court has reviewed these documents.  While they are the documents that Plaintiff describes, the data searches themselves are not sufficiently related to a deliberative process or decision to be made by the EEOC to merit protection under the privilege.  Privilege Log Line Number Documents 174, 228, 229 and 230 will, therefore be disclosed by Plaintiff.

### 4.   Internal Instructional Document

Plaintiff identifies one privilege log line number, document 298, that it asserts is "an internal instructional document" used by the EEOC to determine what type of relief to seek in conciliation, and thus subject to the protection of the privilege.  To the extent that the document is a tool used by the EEOC to guide its conciliation offers it relates to the explanation, interpretation or application of an existing policy within the EEOC.  Such materials are not protected by the deliberative process privilege.  *See Resolution Trust,* 137 F.R.D. at 641, *Mobil Oil,* 102 F.R.D. at 5.  Document line number 298 will, therefore, be disclosed.

### 5.   Internal Charge Inventory Document

Plaintiff identifies one privilege log line number, document 348, that it asserts is "an internal charge inventory document" kept by individual investigators and their superiors to 'evaluate and categorize their charge inventory in order to efficiently and effectively process their charges."   Although it has withheld this document on the basis of the deliberative process privilege, the EEOC offers no explanation as to how this document relates to a deliberative process used by it.  Its argument, essentially, is that this particular list also has

information relating to other charges and claimants that are not at issue in this case.  While that may be true, such an argument does not justify the invocation of the deliberative process privilege.  The EEOC, therefore, has not met its burden of establishing the applicability of the deliberative process privilege.  The document will, therefore, be disclosed.

### 6.     The Benjamin Documents

Defendant asserts that Plaintiff is out of compliance with the Court's Order in which the EEOC agreed to, and was ordered to provide, certain access to the Benjamin documents. Nevertheless, after the parties comply with the above orders of the Court regarding the scope of the privilege, all Benjamin documents contained in the in camera submission will have been disclosed to the Defendants.

**IT IS THEREFORE ORDERED THAT:**

1.     Plaintiff's Motion for Protective Order (Doc. 165) is denied.

2.     Plaintiff's Expedited Motion for Extension of Time to Identify Claimants (Doc. 184) is granted in part and denied in part.

3.     Defendant's Motion to Strike or, in the Alternative, Motion for Leave to File Sur-Reply (Doc. 198) is denied.

4.     Defendant's Motion to Compel Production (Doc. 216) is granted in part and denied in part.

5.     Defendant's Motion to Compel in Camera Inspection (Doc. 217) is granted in part and denied in part.

6.     Plaintiff's Motion for Extension of Time to File Response to Motion to Compel (Doc. 224) is denied as moot.

7.     Plaintiff's Motion for Leave to File Document Under Seal (Doc. 227) is granted.  The Clerk of Court is directed to file Exhibit 1 to EEOC's Response (Doc. 228) under seal.

DATED this 10th day of May, 2012.

A. Murray Snow
_____
G. Murray Snow
United States District Judge