**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>                         Plaintiff,<br><br>v.<br><br>Swissport Fueling, Inc.,<br><br>                         Defendant. | No. CV-10-02101-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Swissport Fueling, Inc.'s ("Swissport") Motion for Summary Judgment. (Doc. 239.) Also pending are the Equal Employment Opportunity Commission's (the "EEOC") Motion to Strike (Doc. 279) and Motion for Leave to File Surreply (Doc. 280). For the reasons discussed below, Swissport's Motion for Summary Judgment is granted in part and denied in part. The EEOC's Motion to Strike Reply is granted in part and denied in part, and its Motion for Leave to File Surreply is denied as moot.

## BACKGROUND

Defendant Swissport provides fueling services to over twenty airlines at Sky Harbor Airport in Phoenix, Arizona. (Doc. 235 at ¶ 1.) Swissport hires fuelers to perform a variety of tasks at the airport, but their main job is to attach fuel lines to planes and monitor them to ensure that they receive the requisite amount of fuel. (*Id.* at ¶ 2.) During the time period relevant to this suit, Swissport employed fuelers who had emigrated from

various countries in Africa, including Sudan, Nigeria, Ghana, and Sierra Leone. (Doc. 1 at 1; Doc. 269 at 2.)

The EEOC brought this suit in November 2010 alleging that Swissport had subjected the African fuelers to illegal and discriminatory treatment in the workplace. (Doc. 1 at 1.) The EEOC alleges that Christian Pelkey, a Swissport manager, was primarily responsible for the fuelers' complaints of verbal abuse, which included calling the fuelers "monkey" and referring to their food as "monkey soup." (Doc. 269 at 2–3.) The allegations also state that Pelkey ridiculed the fuelers' national origins, yelled and cursed at them, and generally treated them more harshly than their non-African counterparts. (*Id.* at 3.) The EEOC alleges that other supervisors also subjected the African fuelers to racially discriminatory treatment, though not to the same extent as Pelkey. (*Id.*)

In April 2007, a group of African fuelers signed a petition to Jim Vescio, Swissport's general manager, complaining about Pelkey's racist behavior. (Doc. 266-71.) Afterward, eighteen of the fuelers who had signed the petition filed charges of discrimination with the EEOC, alleging harassment, disparate treatment, and retaliation.[1] (*See* Doc. 235-28.) The EEOC investigated these allegations over the course of the next three years, requesting and receiving from Swissport over 3000 documents regarding Swissport's employment practices. (Doc. 243 at 2.) Through obtaining these documents, the EEOC possessed the identities and contact information for all potential class members in this suit. (*Id.* at 8.) However, as discussed below, the EEOC did not disclose to Swissport the identities of all the claimants on whose behalf it sought relief, and in some cases did not even contact them, until after it brought suit. In June 2010, the EEOC issued letters of determination ("LODs") for only the eighteen fuelers who had initially filed

---

[1] The fuelers who filed charges of discrimination were Michael Aba, Elguzouli Abaker, William Aguek, Lewis Andoh, Emmanuel Crispo, Alhaj-Elisa Dada, Joseph Gindallang, Garang Ken-Guot, Abdelmoneim Korsi, Alor Kual, Gabriel Maduok, Agot Mil, Abraham Ngon, William Obur, Obariya Olai-Chu, Togo Peter, Foday Sillah, and Godin Torue. (Doc. 235-28.) Garan Ken-Guot has since apparently decided not to proceed with the case and is no longer a named claimant. (Doc. 45 at 4 n.2.)

charges, finding reasonable cause to believe that they had been subjected to harassment, disparate treatment, and retaliation in the workplace. (Doc. 235-29.)

Swissport and the EEOC attempted to conciliate the unlawful practices beginning in June 2010. (Doc. 235-32 at 81.) They exchanged a series of letters in which the EEOC made monetary demands and Swissport responded with requests for more information with which to evaluate its liability. (Doc. 269 at 42.) In these letters, the EEOC requested damages on behalf of the eighteen charging parties, as well as nine unidentified class members for whom reasonable cause LODs were never issued. (Doc. 235-32 at 96.) The letters culminated in an in-person meeting conducted at the EEOC offices, (*id.*), but conciliation ultimately failed in September 2010, (Doc. 266-94 at 1). Thereafter, the EEOC filed suit against Swissport on behalf of the fuelers, alleging that since at least May 2005, Swissport has engaged in unlawful employment practices such as hostile work environment, failure to correct, failure to promote on the basis of race, retaliation, and constructive discharge. (Doc. 1 at ¶¶ 6–11.)

At the scheduling conference held in this conference a number of months after the EEOC filed the complaint, the EEOC identified seventeen charging parties, though it indicated that it was investigating twenty additional potential claimants.[2] (Doc. 243 at 3.) The Court granted the EEOC sixty days from the date of the scheduling conference to add claimants in addition to the seventeen already identified. (Doc. 18 at ¶ 2; Doc. 243 at 4.) By the end of that deadline, on June 28, 2011, the EEOC had identified only nine additional claimants but stated that it was now aware of seventy-five potential claimants none of whom it identified.[3] (Doc. 243 at 4.) It indicated, in a Motion for Extension of Time filed on June 28, that in May of 2011 it had sent letters to 188 fuelers for whom Swissport had provided contact information in 2008, and sought additional time to

---

[2] The seventeen initially identified claimants are the eighteen fuelers who filed charges of discrimination with the EEOC in 2007, minus Garang Ken-Guot.

[3] The nine additional claimants are Stanley Imeah, Mohamed Basha, Anthony Marh, Guot Aruo, Arop Majak, Constantino Lado, Yakub Turay, Emmanuel Gualue, and William Aculey. (Doc. 45-8 at ¶¶ 18–26.)

investigate and identify these additional parties. (*Id.*) The Court allowed the EEOC to continue its investigation on the condition that it would have to show good cause for its delay in adding any claimants who were not identified by the June 28 deadline. (*Id.* at 6–7.) Ultimately, the Court permitted the EEOC to add twelve claimants in addition to the seventeen initially identified and the nine identified by June 28.[4] (*Id.* at 10–18.)[5]

Swissport now contends that it is entitled to summary judgment on the following grounds: (1) the EEOC failed to conciliate in good faith, (2) the EEOC has failed to muster sufficient evidence to support the hostile work environment claims of twenty-four of the twenty-six claimants, (3) Olai-Chu's failure to promote claim is outside the scope of the EEOC's initial LOD, (4) the EEOC alleges retaliation and constructive discharge claims that were not pled in the Complaint, (5) two claimants are time-barred, (6) the EEOC has not met the standard for punitive damages, and (7) the EEOC does not have sufficient evidence to support the unlawful retaliation claims of eight of its claimants.

## ANALYSIS

### I.    Motion to Strike

With its Reply (Doc. 275), Swissport attached three appendixes: an appendix of sham affidavits (Doc. 275-1), an appendix of evidentiary objections (Doc. 275-2), and an appendix of misinterpretations (Doc. 275-3). Swissport also filed a Supplemental Statement of Facts in Support of its Motion for Summary Judgment, (Doc. 276), along with five new exhibits, in addition to the Statement of Facts and exhibits originally filed with its Motion for Summary Judgment. The EEOC has moved to strike all three appendixes and the Supplemental Statement of Facts. (Doc. 279.)

---

[4] The twelve additional claimants permitted to be added in the May 10, 2012 order are Amos Tarley, Angelo Ahawin, Wellington Pyne, Jacob Kual, David Mensah, Kweku Essien, Sulaiman Kargbo, John Ruai, Angelo Ring, Salah Ahmed, Peter Adjej, and Abdirahman Mumin. (Doc. 243 at 12–16.)

[5] As the EEOC acknowledged at oral argument, in permitting the EEOC to designate the addition claimants on whose behalf it was seeking relief in this action, the Court did not make any substantive ruling that the EEOC had appropriately fulfilled any statutory prerequisites to asserting claims for relief on behalf of these individuals.

The Local Rules do not provide for additional exhibits attached to replies in support of summary judgment or for a separate response to the non-moving party's statement of facts. *B2B CFO Partners, LLC v. Kaufman*, 856 F. Supp. 2d 1084, 1086–87 (D. Ariz. 2012). "This is consistent with the moving party's need to show no genuine issue of material facts exists and that there is no need for a trier of fact to weigh conflicting evidence. . . ." *Id.* (citing *EEOC v. TIN Inc.,* No. CV-06-1899-PHX-NVW, 2008 WL 2323913, at *1 (D. Ariz. June 2, 2008), *rev'd on other grounds*, 349 Fed. Appx. 190 (9th Cir. 2009)).

The moving party may set forth objections to the responsive statement of facts, and those objections "may be set forth in a separate reply statement of facts, but that filing *may not introduce new facts or evidence*." *Larson v. United Natural Foods W., Inc.*, No. CV-10-185-PHX-DGC, 2010 WL 5297220 at *2 (D. Ariz. Dec. 20, 2010) (emphasis in original).

In response to the EEOC's Motion to Strike, Swissport argues that this Court has, in all previous cases, erroneously interpreted the Local Rules to prohibit external documents submitted with replies. (Doc. 282 at 2.) Swissport argues that the language of Local Rule 7.2(m)(2) supports its interpretation that external documents attached to replies are, in fact, permitted. That Rule, however, states only that an objection may be made to a statement of facts filed with a party's responsive memorandum. The documents attached by Swissport to its Reply go beyond objections, setting forth new statements of fact and new exhibits to support those statements.

As discussed above, new evidence is flatly prohibited in a reply in support of summary judgment. The EEOC's Motion to Strike is therefore granted on Swissport's Supplemental Statement of Facts. Swissport's appendix of evidentiary objections, however, is permitted by Local Rule 7.2(m)(2), and the EEOC's Motion to Strike is denied as to that appendix. Conversely, Swissport's appendix of misinterpretations appears to be an attack on the weight and credibility of the testimony of the claimants in this case. Swissport's burden on summary judgment is to show that no material issue of

fact exists, not to dispute credibility. The appendix of misinterpretations is therefore stricken. Finally, Swissport's sham appendix will be construed as an objection permitted under Local Rule 7.2(m)(2), as it pertains to information allegedly previously undisclosed by the EEOC. The EEOC's Motion to Strike, therefore, is granted as to the Supplemental Statement of Facts and the appendix of misinterpretations, but denied as to the appendix of evidentiary objections and sham appendix.

## II.    Swissport's Evidentiary Objections

Attached to Swissport's Reply are evidentiary objections to the EEOC's Statement of Facts. Swissport organizes its objections into five categories: hearsay, irrelevant, vague and ambiguous, lack of foundation, and speculation. (Doc. 275-2.)

A court may only consider admissible evidence in ruling on a motion for summary judgment. *Ballen v. City of Redmond,* 466 F.3d 736, 745 (9th Cir. 2006). However, objections to evidence as "irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Harris Technical Sales, Inc. v. Eagle Test Sys., Inc.*, 06-02471-PHX-RCB, 2008 WL 343260 at *3 (D. Ariz. Feb. 5, 2008) (citing *Burch v. Regents of the Univ. of Cal.,* 433 F.Supp.2d 1110, 1120 (E.D. Cal.2006)). Since a district court may not rely on irrelevant facts, legal conclusions, or speculations on a motion for summary judgment in the first place, Swissport's evidentiary objections on those grounds are superfluous. *See id.* In addition, objections that evidence is vague or ambiguous go to the weight of the evidence, an issue that is properly before a jury. As such, it is improper to exclude such evidence at the summary judgment stage. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).

Swissport objects to seventy of the EEOC's fact statements on the ground of hearsay. (Doc. 275-2 at 1.) Of these, four[6] are not supported by the evidence submitted by the EEOC, so they will not be considered in this Motion for Summary Judgment.

[6] Statements 487, 498, 826, and 963.

Twenty-seven are statements made by a person other than the sworn declarant and fall into the category of hearsay.[7] *See* Fed. R. Evid. 801(c). These twenty-seven statements also will not be considered. Five of the statements objected to include statements made by a person other than the declarant, but appear to be asserted for the purpose of establishing Swissport's knowledge of Pelkey's behavior rather than to establish the fact of Pelkey's behavior itself.[8] As such, the Court will consider these statements, but only for the limited purpose of determining Swissport's knowledge of Pelkey's behavior. The remaining thirty-four statements do not appear to be hearsay, and Swissport's objections to them are denied.

Swissport also objects to 117 of the EEOC's fact statements for lack of foundation. (Doc. 275-2 at 2.) Of these objections, twenty-two[9] overlap with the legitimate hearsay objections discussed above and will not be considered in deciding this Motion. One of them, Statement 498, cites to evidence that does not exist in the record, and will not be considered.

The remainder of Swissport's objections are to statements by the fuelers that generally state that Pelkey treated the African fuelers worse than he treated white or Hispanic fuelers. Swissport argues that these statements lack foundation as to personal knowledge because it is "impossible for an employee to make sweeping statements that others were never criticized or yelled at." (Doc. 275 at 23.) However, the statements to which Swissport object appear to be made on the basis of each fueler's personal observations. (Doc. 264 at ¶ 535 (statement by Dodor that he did not personally hear Pelkey say harassing things to white or Mexican fuelers); ¶ 548 (statement by Mil that he never saw Pelkey treat the white or Hispanic fuelers the way he treated the African

---

[7] Statements 441, 466, 467, 497, 781, 782, 786, 787, 788, 789, 790, 791, 792, 793, 794, 795, 796, 797, 799, 800, 801, 802, 803, 804, 805, 807, and 809.

[8] Statements 852, 879, 880, 888, and 892.

[9] Statements 466, 467, 786, 787, 788, 789, 790, 792, 793, 794, 795, 796, 797, 799, 800, 801, 802, 803, 804, 805, 807, and 809.

fuelers); ¶ 555 (statement by Olai-chu that he never heard Swissport managers insult white or Hispanic fuelers); ¶ 563 (statement by Imeah that he did not see Pelkey treat a white fueler in the same way Pelkey treated African fuelers); ¶ 565 (statement by Aculey that he personally noticed that Pelkey treated him and the other African fuelers differently than he treated the white and Hispanic fuelers); ¶ 811 (recounting an incident personally involving Aba); ¶ 821–22 (describing Yusuf's reaction to Pelkey's behavior during an incident at which Yusuf was present); ¶ 911 (statement by Torue that Pelkey treated him and other African fuelers worse after a complaint was submitted); ¶ 935 (statement by Davison that he was in the meeting where the leave policy had changed); ¶ 967 (statement by Korsi describing his experience in applying for a promotion); ¶ 968 (statement by Korsi explaining his reasons for resigning); ¶ 989–95 (describing Dodor's personal experience after he was suspended)). As a whole, it is not implausible that the African fuelers may have observed Pelkey interacting with white and Hispanic fuelers and noticed differences in treatment between those fuelers and themselves.

Swissport also appears to argue that because the fuelers often worked in isolated conditions, they could not possibly know how Pelkey treated the other fuelers. The logical flaw in this argument is apparent—just because the fuelers *often* worked alone does not mean that the fuelers were *always* alone; indeed, a large number of the allegations against Swissport involve situations where many fuelers were congregated in the break room. As such, the remainder of Swissport's evidentiary objections on the basis of lack of foundation are not viable, and the Court will consider the ninety-four statements that are not hearsay and not missing from the record in deciding the Motion for Summary Judgment.

### III.    Sham Affidavit Doctrine and Motion for Leave to File Surreply

In its Reply, Swissport argues that the EEOC's case should be dismissed because the EEOC submitted a series of declarations by the claimants which Swissport asserts are shams. (Doc. 275 at 10–12.) The EEOC seeks leave to file a surreply so that it may have a chance to address Swissport's sham affidavit argument. (Doc. 280 at 2.)

Pursuant to the sham affidavit doctrine, a party cannot avoid summary judgment by creating "an issue of fact by an affidavit contradicting [its] prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Swissport contends that seven of the twenty-eight declarations filed by the EEOC in support of its Response are shams and that the Ninth Circuit has approved of dismissal as a sanction for a party's use of sham affidavits. (Doc. 275 at 11–12.) In fact, the only case cited by Swissport in support of its position involves the Ninth Circuit upholding dismissal of a case against a party that falsified depositions. *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991). None of the Ninth Circuit cases reviewed by this Court addressed dismissal as a sanction for a sham.

In any event, it does not appear that the EEOC filed sham affidavits in this case. The sham affidavit rule is applied with caution because "it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). The party offering the affidavits "is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009) (internal quotations omitted). Nor is an affidavit a sham if it contains "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence." *Id.*

To justify invocation of the sham affidavit rule, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Id.* For example, the Ninth Circuit upheld a district court striking sham affidavits where the deponent could not remember the answers to approximately 185 questions in his deposition, but suddenly recalled them "with perfect clarity" in his declaration submitted with his response to the motion for summary judgment. *Yeager*, 693 F.3d at 1080.

Here, Swissport attaches a Sham Appendix setting out in chart form the inconsistencies it believes demonstrate that the EEOC's declarations are shams. However, the statements in the declarations do not contradict the declarants' previous

deposition testimony enough to justify applying the sham affidavit doctrine. Some statements refer to inconsistencies that are immaterial, such as whether other people were present when Pelkey made a particular statement. (Doc. 275-1 at 1.) Other statements are found in declarations by declarants who were never deposed, and thus have no prior testimony to contradict. (*Id.* at 2, 6, 7.) Still more statements have no apparent contradiction to deposition testimony; Swissport argues that these statements are contradictory because the incidents they describe were not mentioned in the declarants' depositions. Though a glaring lack of memory can lead to a finding that an affidavit is a sham, as in *Yeager*, the omissions by the declarants here do not rise to the extreme level of forgetfulness exhibited by the declarant in that case. The declarants appeared merely to have struggled in their depositions to remember events that occurred many years ago. As such, the Court is reluctant to attribute to the declarants the malicious state of mind that undergirds the sham affidavit rule. The EEOC's Complaint will not be dismissed on the ground that it submitted sham affidavits, and the twenty-eight declarations submitted by the EEOC will be considered in deciding the motion for summary judgment. In light of this, it is not necessary for the EEOC to file a surreply to address the sham affidavit argument, and the EEOC's Motion for Leave to File Surreply is denied as moot.

**IV.  Motion for Summary Judgment**

    **A.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex*, 477 U.S. at 322–23; *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also* LRCiv. 1.10(l)(1) ("Any party opposing a motion for summary judgment must . . . set[] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party."). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of

material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

### B.    Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Title VII guarantees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Thus, "a workplace in which racial hostility is pervasive constitutes a form of discrimination." *Id.* (quoting *Woods v. Graphic Commc'ns*, 925 F.2d 1192, 1200 (9th Cir. 1991)).

To determine whether conduct was sufficiently severe or pervasive to violate Title VII, a court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71, *reh'g denied,* 533 U.S. 912 (2001)). In addition, "[t]he working environment must both subjectively and objectively be perceived as abusive." *Id.* However, the allegations of hostile conduct are to "be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *McGinest*, 360 F.3d at 1115.

Swissport asserts that it is entitled to summary judgment for two reasons: (1) the conduct alleged by the EEOC was not racial in nature, and (2) the conduct was not severe enough to constitute a hostile work environment. Swissport also argues that the EEOC's burden is to present evidence of each element of the hostile work environment claim for

each individual claimant, rather than presenting evidence of a hostile work environment existing in the aggregate. (Doc. 239 at 4–6.) Swissport cites an array of cases from outside of the Ninth Circuit in support of this argument. (*See id.* at 5.) The EEOC does not expressly dispute this claim, but appears to present its evidence of hostile work environment in the aggregate, rather than establishing the elements for each individual claimant.

Neither the Ninth Circuit nor the District of Arizona has expressly spoken on the issue of the EEOC's burden when prosecuting a hostile work environment claim on behalf of multiple claimants. However, courts in this district have analyzed the EEOC's hostile work environment claims on a claimant-by-claimant basis in the past. *See E.E.O.C. v. Love's Travel Stops & Country Stores, Inc.*, 677 F. Supp. 2d 1176, 1187 (D. Ariz. 2009) (analyzing the two claimants individually); *E.E.O.C. v. GLC Restaurants, Inc.*, No. CV 05-0618-PCT-DGC, 2006 WL 3052224 (D. Ariz. Oct. 26, 2006) (analyzing six claimants individually). The Court is of the view that such an approach is required. Thus, the Court will analyze the EEOC's evidence to see whether it meets its burden to overcome summary judgment for each claimant individually.

Swissport's first argument is that the alleged harassment consisted solely of comments that the claimants were eating monkey soup or statements that even a monkey could adequately do the jobs assigned to the claimants. (Doc. 239 at 7.) Swissport asserts that there is nothing inherently racial about the term "monkey," and thus there is no discrimination on the basis of race as prohibited by Title VII. However, the two cases cited by Swissport do not support the conclusion that, as a matter of law, the term "monkey" used towards African individuals is racially neutral. Swissport's cases refer only to the term in the context of the phrase "monkey-on-your-back." *See Gregory v. Widnall*, 153 F.3d 1071, 1074–75 (9th Cir. 1998); *Ross v. Pfizer, Inc.*, 375 Fed. Appx. 450, 454 (6th Cir. 2010). Conversely, other courts have found that term to hold racial connotations. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012); *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 911 (8th Cir. 2006); *White v.*

*BFI Waste Svcs., LLC*, 375 F.3d 288, 298 (4th Cir. 2004). Therefore, a material issue of fact exists as to whether the Swissport employees' use of the word "monkey" in various contexts toward the claimants constituted racial discrimination.

Swissport further asserts that it is entitled to summary judgment as to twenty-four of the claimants on whose behalf the EEOC is seeking relief on a hostile work environment claim because they heard Pelkey make monkey comments too infrequently. In making this argument, Swissport only points to evidence in the record that thirteen claimants did not hear Pelkey's comments frequently enough to raise a hostile work environment claim. (Doc. 239 at 9.) As such, Swissport has not met its burden on summary judgment as to the remaining eleven claimants for whom Swissport made no individual argument. Its Motion for Summary Judgment is denied as to those claimants.[10]

In *Vasquez v. County of Los Angeles*, the Ninth Circuit found that two offensive remarks combined with allegations of unfair treatment were not severe or pervasive enough to create a hostile work environment. 349 F.3d at 644. In *Sanchez v. City of Santa Ana*, the Ninth Circuit upheld a district court's decision that no hostile work environment existed where "the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino." *Id.* at 643 (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990)). Conversely, evidence that a plaintiff was subject to "several racial incidents . . . each year" over a period of ten to fifteen years, "ranging in severity from being called racially derogatory names to experiencing a potentially life-threatening accident" is sufficient to create a material issue of fact on a motion for summary judgment. *McGinest*, 360 F.3d at 1118.

Swissport points to evidence in the record that two claimants, Ngon and Turay, did not hear Pelkey make any monkey comments at all. (Doc. 239 at 9.) It points to other

---

[10] The claimants for which Swissport makes no individual argument are Gindallang, Kual, Maduok, Mil, Obur, Peter, Imeah, Basha, Aruo, Lado, and Aculey.

- 14 -

evidence that ten of the claimants[11] only heard Pelkey make monkey comments a maximum of three times.[12] Being subject to an offensive term, even a racial slur, on three separate occasions does not, as a matter of law, reach the level of severity sufficient to create an issue of fact as to whether a hostile work environment existed. Though three racially denigrating comments may be degrading and disturbing to the listener, they do not reach the level of racial hostility exhibited in *Sanchez*, where a few instances of racially offensive slurs were compounded with disparate and illegal treatment. The facts of *Sanchez*, which were much more extreme than the behavior alleged by the EEOC in this case, were insufficient to create a hostile work environment as a matter of law. Swissport has therefore met its burden of demonstrating that there is no material issue of fact as to whether a hostile work environment existed for the claimants at their fueling jobs. The burden now falls on the EEOC to point to evidence in the record that the hostile conduct in the workplace was more severe and pervasive than as shown by the evidence presented by Swissport.

The EEOC alleges generally that the actions of Pelkey and the other Swissport supervisors created a pervasively hostile work environment. (Doc. 269 at 10–11.) The EEOC does not make individual arguments regarding the claimants, but instead points to over one hundred statements of fact that it claims create a genuine issue of material fact as to the issue of whether a hostile work environment existed. However, the many fact statements cited to by the EEOC do occasionally raise an issue of fact as to the individual claimants. *See Mcginest*, 360 F.3d at 1103, 1115 ("Repeated derogatory or humiliating statements can constitute a hostile work environment.") (citing *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000)) (internal quotations omitted).

---

[11] Dada, Crispo, Abaker, Korsi, Sillah, Aguek, Gualue, Majak, Marh, and Aba.

[12] Swissport also argues that it is entitled to summary judgment on Olai-Chu's claim of hostile work environment because Olai-Chu testified that the only harassment he felt was Swissport's failure to promote him. However, the evidence in the record to which Swissport cites was not attached. As such, its Motion for Summary Judgment as to Olai-Chu's hostile work environment claim is denied.

Dada testified that he heard Pelkey make monkey soup comments to him or other African fuelers twenty times. (Doc. 266-12 at 35:14–25, 36:4–8.) Every time Pelkey spoke to him it was "in a very disrespectful, insulting way," but Dada never saw Pelkey speak to white or Hispanic fuelers in this way. (Doc. 266-48 at ¶ 4.) Gualue declared that he interacted with Pelkey frequently, (Doc. 266-51 at ¶ 3), and that Pelkey treated him and the other African fuelers like they "weren't even human," (*id.* at ¶ 8). Furthermore, every time Pelkey saw Gualue and the other African fuelers in the break room or eating their meals, he would ridicule them and their food. (*Id.* at ¶ 4.) Marh declared that he and the other African fuelers were frequently subjected to Pelkey's screaming, yelling, and cursing, but that he never saw Pelkey treat white or Hispanic fuelers this way. (Doc. 266-58 at ¶¶ 4, 7.) Every time Marh interacted with Pelkey, Pelkey spoke in a "harassing brutal manner" and would refer to Marh and other African fuelers as "You Africans" or "monkey." (*Id.* at ¶ 4.) There was also an incident in which Pelkey showed Marh a video of a monkey and compared the video to the African fuelers. (*Id.* at ¶ 5.) Aba declared that Pelkey almost always referred to the African fuelers as monkeys, and that he saw Pelkey almost every day. (Doc. 266-40 at ¶¶ 4–5.) He also declared that Pelkey made comments about the African fuelers' food many times. (*Id.* at ¶ 8.) Turay declared that his supervisors regularly gave him and other African fuelers more difficult jobs while favorably treating white and Hispanic fuelers, and that his supervisors and co-workers frequently made fun of his food by calling it "monkey soup." (Doc. 266-68 at ¶¶ 4–7.)

These incidents are sufficient in frequency and severity to create a material issue of genuine fact as to the hostile work environment claims of Dada, Gualue, Marh, Aba, and Turay. Evaluating these incidents from the perspective of an objective person belonging to the ethnic group of the claimants, a reasonable jury could find that the conduct to which these fuelers were subjected was degrading and abusive. Furthermore, the EEOC has presented evidence that the claimants subjectively found the conduct offensive. (*See* Docs. 266-48 at ¶ 5; 266-51 at ¶¶ 5, 10; 266-58 at ¶¶ 5, 7, 8; 266-40 at ¶¶ 5, 8; 266-68 at ¶ 8) (presenting declarations from the claimants stating that Pelkey's

statements made them feel less valuable than white or Hispanic fuelers, like they were less than human, or like they were slaves to Swissport). The EEOC has successfully pointed to evidence in the record creating a material issue of fact as to whether there was a hostile work environment toward the African claimants at Swissport. Swissport's Motion for Summary Judgment is therefore denied as to Dada, Gualue, Marh, Aba, and Turay.

With regard to the remaining claimants, the EEOC asserts that "a supervisor's harassment toward one employee can contribute to a hostile working environment for other employees, even if they are not directly exposed to all, or even most, of the harassment." (Doc. 269 at 15.) It is true that "[o]ffensive comments do not all need to be made directly to an employee for a work environment to be considered hostile." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008). However, the EEOC does not cite to any cases in which a hostile work environment was found based *only* on offensive comments made to persons other than the claimant. In each case where the Ninth Circuit considered evidence of offensive comments made to others, the plaintiff was also personally subjected to racist comments or actions. *Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1202 (9th Cir. 1991) (plaintiff subjected to "several racial remarks and hostility" on top of "racial jokes, cartoons, comments, and other forms of hostility directed at almost every conceivable racial and ethnic group" at the workplace); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008) (plaintiff subject to a colleague uttering a racial slur and moving as if to strike him, as well as another coworker repeatedly requesting that he take the trash out because she thought it was "funny," along with evidence that the hiring committee screened an applicant out on the basis of race, though plaintiff was not present during those remarks).

The EEOC submits evidence that the remaining claimants heard from other fuelers that Pelkey made monkey comments toward those fuelers. (Docs. 266-60 at ¶ 5 (Ngon Decl.); 266-47 at ¶ 7 (Crispo Decl.); 266-53 at ¶ 7 (Korsi Decl.); 266-66 at ¶ 5 (Sillah Decl.); 266-43 at ¶ 4, 8 (Aguek Decl.); 266-57 at ¶ 8 (Majak Decl.).) The fact that this

evidence can be *considered* in determining whether a hostile work environment exists does not mean that it is sufficient to raise a genuine issue of material fact. The individual claimants who heard about Pelkey's monkey comments from other fuelers were themselves subjected to little or no other racial hostility. (*See, e.g.*, Docs. 266-60 at ¶ 4 (Ngon never heard Pelkey make racial comments to him personally); 266-53 at ¶ 5 (Korsi was subjected to monkey soup comments in the break room "a few times"); 266-66 at ¶ 4 (Sillah was subjected to a monkey soup comment once)). Even in combination with the reports that they heard from other fuelers about racially discriminatory treatment, the evidence cannot support a hostile work environment claim for these claimants.

In sum, Swissport's Motion for Summary Judgment is denied as to claimants Gindallang, Kual, Maduok, Mil, Obur, Peter, Imeah, Basha, Aruo, Lado, Aculey, Olai-Chu, Dada, Gualue, Marh, Aba, and Turay. However, its Motion is granted as to claimants Ngon, Crispo, Abaker, Korsi, Sillah, Aguek, and Majak.

### C.    Improper Expansion of Claims

While the EEOC is empowered by Congress to bring suit on behalf of private parties, it is "required by law to refrain from commencing a civil action until it has discharged its administrative duties." *Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 369 (1977). There are certain steps that must be taken before the EEOC may pursue litigation. *See* 42 U.S.C. § 2000e–5(b). These include: (1) the private party's filing of a charge within, at most, 300 days of the Title VII violation, (2) the EEOC's service of that charge on the employer, (3) the EEOC's investigation into the charge and determination of whether reasonable cause exists to believe that the charge is true (usually by issuing a LOD), and (4) an attempt to conciliate the violation between the employee and employer. *Id.*; *Occidental Life Ins.*, 432 U.S. at 359.

The Ninth Circuit has stated that a district court's subject matter jurisdiction over an EEOC action extends only to claims that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100

(9th Cir. 2002) (emphasis in original) (internal citations omitted). However, the language of the EEOC charge out of which the claims must arise are construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* Though claims of new discrimination can arise during reasonable investigation of the filed charge, the new claim must "be the subject of an EEOC 'reasonable cause' determination to be followed by an EEOC offer of conciliation." *E.E.O.C. v. Hearst Corp., Seattle Post-Intelligencer Div.*, 553 F.2d 579, 580 (9th Cir. 1976).

Swissport contends that it is entitled to summary judgment on the retaliation claims of Aguek and Obur, as well as Olai-Chu's failure to promote claim and Korsi's constructive discharge claim, because the EEOC failed to give Swissport reasonable notice of these claims. Swissport extensively cites a recent Eighth Circuit case, *E.E.O.C. v. CRST Van Expedited, Inc.*, in support of its claim. 679 F.3d 657 (8th Cir. 2012). In *CRST*, the Eighth Circuit affirmed the district court's dismissal of the EEOC's claims as to sixty-seven claimants because: (1) the EEOC did not investigate the specific allegations of those claimants until after the Complaint was filed, (2) it did not identify those sixty-seven claimants as members of its "class" until after the Complaint was filed, (3) it did not make a reasonable-cause determination as to the specific allegations of those claimants until after the Complaint was filed, and (4) the EEOC did not attempt to conciliate the claimants' allegations prior to filing the Complaint. *Id.* at 673–74. *CRST* thus stands, at least in part, for the proposition that the EEOC cannot pursue claims of which it failed to give the defendant notice during its investigation.

In response, the EEOC spends eight pages of its brief arguing that its pre-litigation actions are not subject to judicial review. It may be true that the EEOC's investigation and conciliation efforts are committed to EEOC discretion by law, or that neither the reasonable cause determination nor the conciliation results constitute "final agency action," but this argument misses the mark. Swissport seeks to have this Court review not the correctness of the EEOC's determinations but rather whether it discharged its

- 19 -

administrative duties that are a prerequisite to seeking judicial relief. Whether the EEOC fulfilled its statutory prerequisites to suit is a proper issue for the Court to decide. *E.E.O.C. v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982).

Swissport contends that it is entitled to summary judgment on Aguek's claim of retaliatory failure to promote because, although Aguek's LOD stated that the EEOC had reasonable cause to find that Swissport retaliated against Aguek, it failed to state the factual basis for the finding. (Doc. 239 at 15.) However, the LOD itself states that Swissport retaliated against Aguek for complaining about the discriminatory treatment to which he and the other African fuelers were subjected. (Doc. 235-29 at 25.) Swissport takes issue with the fact that the EEOC did not state with specificity what the retaliatory action was. However, Swissport cites no case stating that such specificity is required in order for the LOD to constitute "notice," and the Court's review of the case law reveals no such requirement. Indeed, this Court and others have held that the EEOC's LODs need not reach the level of specificity demanded by the employer. *See E.E.O.C. v. Collegeville/Imagineering*, No. CV-05-3033-PHX-DGC, 2007 WL 2051448 at *9 (D. Ariz. July 16, 2007); *E.E.O.C. v. GMRI, Inc.*, No. 1:08-CV-02214, 2009 WL 2151788 at *7 (N.D. Ohio July 16, 2009); *E.E.O.C. v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227, 237–38 (E.D.N.Y. 2007). As such, Swissport's Motion for Summary Judgment as to Aguek's claim of retaliation is denied.

Swissport also contends that it is entitled to summary judgment on Obur's claim of retaliatory termination because it was never disclosed in the LOD. (Doc. 239 at 15.) Swissport's assertions on this ground are incorrect. In fact, both Obur's initial charge and the EEOC's subsequent LOD for Obur expressly allege and assert retaliatory termination. (Doc. 235-28 at 15; 235-29 at 47.) Swissport has thus failed to meet its initial burden and its Motion for Summary Judgment as to Obur's claim of retaliation is denied. Swissport further asserts that the retaliation claims of seven other claimants are fatally flawed for

the same reason as Obur's.[13] As discussed above, Obur's retaliation claim is not flawed in the manner suggested by Swissport. In addition, Swissport cites to no portion of the record in making this argument against these seven claimants. Moreover, the Court's independent review of the record shows that, for every single one of these claimants, a claim of retaliation was asserted either in the initial charge or the LOD. (Doc. 235-28 at 12; *id.* at 17; Doc. 235-29 at 41; *id.* at 21; *id.* at 37; *id.* at 43; *id.* at 45; *id.* at 51; *id.* at 55.) Swissport's Motion for Summary Judgment as to these retaliation claims is therefore denied.

Swissport further contends that it is entitled to summary judgment on Olai-Chu's claim of racially motivated failure to promote claim. It points to the absence of any suggestion of a failure to promote claim in either Olai-Chu's initial charge or the LOD subsequently issued by the EEOC; indeed, Olai-Chu's LOD asserted only a finding of reasonable cause for harassment and disparate treatment. (Doc. 235-29 at 49.) In response, the EEOC argues that the disparate treatment reasonable cause finding encompasses the failure to promote claim. (Doc. 269 at 38.) It also contends that, in the process of its investigation, it requested information from Swissport pertaining to promotions, and that this was sufficient to put Swissport on notice of the failure to promote claim. (*Id.*) The EEOC points to a letter in which the EEOC requested promotion information from February 13, 2008. (Doc. 266-97 at 1.) There is sufficient evidence to create a material issue of fact as to whether Olai-Chu's claim of failure to promote grew out of the EEOC's reasonable investigation of his initial charge of discrimination. Moreover, while Olai-Chu's LOD does not expressly state a finding for "failure to promote," it does expressly state a finding for disparate treatment. "Failure to promote is a common manifestation of disparate treatment." *McGinest*, 360 F.3d at 1122. Swissport's Motion for Summary Judgment on this ground therefore is denied.

---

[13] Swissport claims that it is entitled to summary judgment on the retaliation claims of Torue, Aba, Korsi, Maduok, Mil, Peter, and Ngon for the same reasons that it set out for Obur's retaliation claim. (Doc. 239 at 15 n.8.)

Swissport also contends that it is entitled to summary judgment on Korsi's constructive discharge claim. Swissport points to Korsi's initial charge and LOD, neither of which mentions a constructive discharge claim. (Doc. 235-28 at 10; Doc. 236-29 at 37.) Therefore, the burden shifts to the EEOC to point to some evidence in the record that it had put Swissport on notice of Korsi's constructive discharge claim. The EEOC does not address Korsi's claim at all in its Response. Swissport's Motion for Summary Judgment as to Korsi's constructive discharge claim is therefore granted.

Swissport finally contends that it is entitled to summary judgment on all retaliation claims besides Olai-Chu's failure to promote claim and Andoh's constructive discharge claim. (Doc. 239 at 16.) Swissport states that because these are the only two retaliation claims pled in the Complaint, the EEOC is barred from bringing any other claims. Again, Swissport's assertions on this ground are incorrect. The Complaint alleges that Swissport retaliated against the Claimants and includes a non-exhaustive list of five actions taken by Swissport that allegedly constituted illegal retaliation. (Doc. 1 at ¶ 10.) Swissport's Motion for Summary Judgment is denied on this ground.

## C.     Olai-Chu's Failure to Promote Claim

Swissport asserts that it is entitled to summary judgment on Olai-Chu's failure to promote claim because it offered Olai-Chu a promotion in 2008 which Olai-Chu turned down. (Doc. 239 at 23.) However, the EEOC appears to base its failure to promote claim on a different incident that occurred in 2007. (Doc. 269 at 24.)

Because failure to promote claims are disparate treatment claims, they are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under *McDonnell Douglas*, a plaintiff "can make out a prima facie case of discrimination by showing that (1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, (3) he was rejected despite his qualifications, and (4) after the rejection, the position remained available and the employer continued to review applicants possessing

comparable qualifications." *Id.* On summary judgment, the plaintiff need only submit a "minimal" amount of proof to establish the prima facie case. *Id.*

The establishment of the prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against the employee." *Id.* (internal quotations omitted). The burden then shifts to "the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection." *Id.* (internal quotations omitted). The employer must "clearly set forth . . . the reasons for the plaintiff's rejection."

The parties agree that Olai-Chu belongs to a racial minority (specifically, that he is Black and Nigerian), and that he is therefore a member of a protected class. (*See* Doc. 266-63 at ¶ 3.) The EEOC sets forth evidence that Olai-Chu applied for a supervisor position in 2007, (Doc. 266-30 at 46, ¶¶ 3–5), that he received positive performance reviews prior to applying, (Doc. 266-92), but that he was not selected for the position, (Doc. 266-30 at 48, ¶¶ 5–7.). It also points to evidence that, during Olai-Chu's interview for the supervisor position, Pelkey stated that Africans were not entitled to pay or promotions, and that they were not educated. (Doc. 266-30 at 67, ¶¶ 15–22). In addition, it cites to evidence that after the interview, Pelkey told Olai-Chu that Africans were not made for the supervisor positions because they were slaves. (Doc. 266-30 at 69, ¶ 17–70, ¶ 8.) It further points to evidence that after Olai-Chu's interview, a white fueler was selected for the supervisor position. (Doc. 266-30 at 48, ¶¶ 14–21.) This evidence is sufficient to establish a prima facie case under the *McDonnell Douglas* framework. The burden therefore shifts to Swissport to state a legitimate and nondiscriminatory reason for its failure to promote Olai-Chu.

Swissport does not argue that it had a nondiscriminatory reason for failing to promote Olai-Chu. Instead, it asserts that the EEOC's failure to promote claim arising from the 2007 incident was never made a subject for conciliation, and thus that the EEOC may not now bring a claim based on that incident. (Doc. 275 at 18.) This assertion is based on the fact that Olai-Chu's LOD only mentions "disparate treatment" and makes no reference to a failure to promote claim. (Doc. 235 at ¶ 174.) However, as discussed

above, failure to promote is a type of disparate treatment. *See* Section IV.B, *supra*. Swissport points to no other parts of the record that show that the disparate treatment claim was not conciliated.

Swissport does not assert any legitimate and nondiscriminatory reason for its failure to promote Olai-Chu in 2007, and has thus failed to overcome the EEOC's establishment of a prima facie case for disparate treatment. The Motion for Summary Judgment on Olai-Chu's failure to promote claim is denied.

### D.  Retaliation Claims

Swissport contends that it is entitled to summary judgment on all the individual claimants' retaliation claims because it has nondiscriminatory reasons for all of its actions and the EEOC is unable to point to sufficient evidence of pretext to defeat its Motion for Summary Judgment. (Doc. 239 at 23–24.)

Retaliation claims are evaluated using the same *McDonnell Douglas* burden-shifting framework discussed above. "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray*, 217 F.3d at 1240. Once the plaintiff establishes a prima facie retaliation claim, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." *Id.* "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.*

An adverse employment action is defined as "any adverse treatment that is based on a retaliatory motive and reasonably likely to deter the charging part or others from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000). The action must be "tangible" and represent a "significant change in employment status." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 960 (9th Cir. 2004). It includes "lateral transfers, unfavorable job references, and changes in work schedules." *Ray*, 217 F.3d at 1243. However, actionable retaliation does not include trivial

employment actions that would not deter employees from complaining about Title VII violations. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)

Though Swissport asserts that it is entitled to summary judgment on all the retaliation claims being brought by the EEOC, it only makes arguments as to six of the claimants—Torue, Aba, Korsi, Andoh, Ngon, and Aguek. Thus, Swissport's Motion for Summary Judgment is denied for the remaining claimants asserting retaliation, because it failed to meet its initial burden of showing no material issue of fact regarding their claims.[14]

The parties do not dispute that the claimants asserting retaliation claims engaged in protected activity when they complained to Swissport's general manager about workplace discrimination and when they filed charges with the EEOC. (Doc. 269 at 17.) Instead, they disagree about whether each claimant was subjected to an adverse employment action and whether a causal link existed between the protected activity and the alleged adverse action.

### 1. Godwin Torue

Swissport argues that it is entitled to summary judgment on Godwin Torue's retaliation claim because Torue suffered no adverse employment action. (Doc. 239 at 24–25.) Swissport points to the fact that, while Torue felt that he was wrongfully denied promotions, (Doc. 235-37 at 45, ¶¶ 13–19), he never actually applied for a promotion, (*id.* at 150, 10–11). In response, the EEOC does not present any evidence that Swissport failed to promote Torue in retaliation for his protected activity, but points to other evidence of retaliation that took place after Torue and the other fuelers complained. It presents evidence that Pelkey more frequently called Torue into work on his days off, that he checked Torue's paperwork more carefully, and that he behaved more angrily towards Torue after the complaint. (Doc. 266-67 at ¶ 12.)

---

[14] The EEOC asserts retaliation claims on behalf of Aba, Andoh, Korsi, Maduok, Mil, Torue, Ngon, and Aguek. Swissport's Motion is therefore denied as to Maduok and Mil.

This Court has held that neither more careful scrutiny of a claimant's work nor hostile body language constitutes an adverse employment action capable of supporting a claim of retaliation. *See Anderson v. Ariz.*, No. CV06-00817-PHX-NVW, 2007 WL 1461623 at *8 (D. Ariz. May 16, 2007) (finding no adverse employment action where supervisor began nitpicking employee's work after she engaged in protected activity); *Morton v. ALS Services USA Corp.*, No. CV 11-00946-PHX-DGC, 2012 WL 3578857 at *4 (D. Ariz. Aug. 20, 2012) (finding no adverse employment action where co-worker physically intimidated employee by "getting into her physical space). Here, the EEOC's allegations of the adverse employment actions are not more severe than the allegations in *Anderson* and *Morton*. Even if taken as true, the allegations of Pelkey's more careful scrutiny of Torue's work and his angrier body language do not constitute a "significant change in employment status."

However, the EEOC also sets forth evidence that after Torue and the other fuelers submitted the complaint letter, Pelkey would more frequently call Torue on his days off and tell him that he had to come in to work. (Doc. 266-67 at ¶ 12.) If Pelkey made these calls with sufficient frequency, and if Torue actually felt compelled to work on his days off, a jury could find that Pelkey's actions were a "change in work schedule" that constituted an adverse employment action. The EEOC has raised a material issue of genuine fact as to whether Pelkey retaliated against Torue by calling him to come into work on his days off. As such, Swissport's Motion for Summary Judgment on Torue's retaliation claim is denied as it pertains to the allegation that Torue was more frequently called in to work on his days off.

### 2. Michael Aba

Swissport contends that it is entitled to summary judgment on Michael Aba's claim because Aba never suffered any adverse employment action. It is undisputed that Otis Williams, the new general manager, told Aba that he was investigating Aba for allegedly encouraging other employees to file false workers' compensation claims, but that Aba was never placed on leave or otherwise disciplined. (Docs. 239 at 25; 269 at 18.)

The parties agree that the investigation ended a week later with Williams telling Aba "to forget about the situation." (Doc. 269 at 18.) Swissport contends that this is insufficient to constitute adverse employment action.

The EEOC, in response, argues that the adverse employment action was not the investigation but rather the fact that Pelkey falsely accused Aba to drum up an investigation against him. (*Id.* at 18–19.) However, being the subject of an investigation is not a "significant change in employment status." An investigation that resulted in a finding that the employee committed no wrongdoing would not deter that employee from complaining about Title VII violations. The Ninth Circuit has held that a supervisor's initiation of an administrative inquiry is insufficient to support a finding of the requisite causal link without evidence showing that the supervisor's bias tainted the inquiry and affected the subsequent adverse employment decision. *Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007). Thus, only the subsequent adverse employment decision constitutes action sufficient to support a retaliation claim; the inquiry itself does not suffice. As such, because the EEOC's evidence does not create a material issue of fact that Aba suffered an adverse employment action, Swissport's Motion for Summary Judgment is granted.

### 3. Abdelmoneim Korsi

Swissport seeks summary judgment on Abdelmoneim Korsi's claims of retaliation, asserting that Korsi suffered no adverse employment action within a time frame sufficiently close to the protected activity to meet the requisite causal link.

The EEOC puts forth three instances of alleged adverse employment action by Swissport: (1) reducing Korsi's overtime hours, (2) denying Korsi a promotion, and (3) constructively discharging Korsi. (Doc. 269 at 19–20.)

A reduction in hours constitutes an adverse employment action. *Ray*, 217 F.3d at 1243 (holding that a change in schedule constitutes an adverse employment action). Swissport points to evidence in the record that Korsi worked approximately 275 overtime hours in the six months prior to filing the complaint of discrimination, but worked 626 overtime hours in the six months after the filing. (Doc. 235-3 at ¶¶ 11–12.) In opposition,

the EEOC presents evidence that in the six months after Korsi filed his charge of discrimination, his overtime hours were reduced from sixty hours per pay period to forty hours per period. (Doc. 266-53 at ¶ 11.) A material issue of fact exists as to whether Korsi's overtime hours were reduced in the six months following the filing of the complaint. As such, Swissport's Motion for Summary Judgment is denied.

Failing to promote an employee also constitutes an adverse employment action. *Brooks*, 229 F.3d at 928 (holding that "refusal to consider for promotion" is an adverse employment action). However, to support the requisite causal link, the adverse employment action must occur "fairly soon after the employee's protected expression." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (internal quotations omitted). Here, the EEOC does not dispute that the denial of Korsi's promotion occurred ten months after his filing of his charge of discrimination. (Doc. 239 at 27.) A ten-month lapse between the protected activity and the adverse employment action is too long to support the requisite causal link. *Id.* (citing with approval cases that found lapses of eight months to be too long to support the requisite causal link). Swissport's Motion for Summary Judgment is therefore granted on Korsi's retaliation claim based on the failure to promote.

Finally, the EEOC points to Korsi's constructive discharge as evidence of an adverse employment action. A constructive discharge occurs when "working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks*, 229 F.3d at 930. The EEOC bases Korsi's constructive discharge claim on the above-listed reduction in overtime hours and Swissport's failure to promote Korsi. A reduction in overtime hours does not, as a matter of law, constitute an "extraordinary and egregious" circumstance that would compel a reasonable employee to leave a job. Nor is a denial of a promotion a sufficiently extreme condition to support a constructive discharge claim. *See Poland*, 494 F.3d 1174, 1185–86 (finding no

constructive discharge although employee was transferred from supervisory to non-supervisory position and forced to take an extended separation from his family). As such, Swissport's Motion is also granted on any retaliation claim by Korsi based on constructive discharge.

### 4.    Lewis Andoh and Abraham Ngon

Swissport contends that it is entitled to summary judgment on the retaliation claims of Lewis Andoh and Abraham Ngon because they never suffered any adverse employment action. Swissport contends that the only adverse action Andoh and Ngon suffered was an alleged change in Swissport's leave policy that detrimentally affected the African fuelers. Swissport points to evidence that the leave policy never in fact changed. (Docs. 235-38 at 110, ¶¶ 5–10; 235-39 at ¶¶ 4–9.)

In response, the EEOC argues that even if Swissport's written policy did not change, it was inconsistently enforced. It sets forth evidence of an unwritten change in the personal leave policy that disparately impacted African fuelers. (Doc. 266-13 at 149, ¶ 12–150, ¶ 17.) It also cites to evidence that a Swissport manager abruptly denied Andoh's leave request the day before Andoh was scheduled to fly to Africa, despite having reassured Andoh that "everything will be fine" on the request for the previous four months. (Docs. 266-5 at 43, ¶ 18–44, ¶ 24; 266-44 at ¶¶ 6–7.) The denial occurred in August 2007, shortly after Andoh and some other fuelers submitted a complaint letter to Swissport's general manager. (Doc. 266-44 at ¶ 5.) In addition, the EEOC points to evidence that Ngon was told that Swissport would not let him take leave "like [they] normally do" and that he would have to resign if he wanted to use the plane ticket he had purchased. (Doc. 266-60 at ¶¶ 7–8.) Ngon also signed the complaint letter in May 2007 and his leave request was denied a few months later in October. (*Id.* at ¶¶ 6–7.)

A discriminatory change in the leave policy constitutes an adverse employment action that would deter employees from taking protected action. The EEOC has demonstrated that a material issue of fact exists regarding whether Swissport discriminatorily denied leave to Andoh and Ngon in retaliation for signing the complaint

letter. As such, Swissport's Motion for Summary Judgment is denied for their claims.

Swissport also contends that it is entitled to summary judgment on Andoh's constructive discharge claim. As stated above, a constructive discharge occurs when "working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks*, 229 F.3d at 930.

Here, the EEOC has presented evidence that Andoh was repeatedly assured that his leave request would be granted and not told until the day before he was scheduled to leave that his request was denied. (Docs. 266-5 at 43, ¶ 18–44, ¶ 24; 266-44 at ¶¶ 6–7.) Andoh was expressly told that he had to choose between resignation and forfeiting his vacation plans and the plane ticket he had already bought. (Doc. 266-44 at ¶¶ 7–8.) The EEOC has also presented evidence that Swissport's denials of fuelers' leave requests discriminatorily impacted African fuelers. (Doc. 266-13 at 149, ¶ 12'–150, ¶ 17.) A reasonable jury could find that these circumstances were "sufficiently extraordinary and egregious" to overcome Andoh's motivation to continue earning a livelihood to serve Swissport. Swissport's Motion is therefore denied as to Andoh's constructive discharge claim.

Swissport also argues that it is entitled to summary judgment as a general matter on any claims of retaliation based on a change in the personal leave policy. (Doc. 239 at 30.) Swissport asserts that the EEOC cannot rely on any change in the personal leave policy because this change was never mentioned in any charge of discrimination or LOD. However, as discussed above in Section IV.C, neither the charges nor the LODs must reach the level of specificity demanded by the employer. The charges and the LODs alleged that Swissport retaliated against its employees, which is sufficient to support the EEOC's current claims of retaliation.

Swissport also contends that the EEOC cannot rely on a change in the leave policy because the policy never changed. Swissport points to the same evidence as above that its

written leave policy stayed the same during the time of the alleged retaliatory acts. (Doc. 235-38 at 110, ¶¶ 5–10.) However, as discussed above, the EEOC has presented evidence that an unwritten change occurred in which leave for African fuelers was not granted as freely as before. (Doc. 266-13 at 149, ¶ 12–150, ¶ 17.) This creates a material issue of fact as to whether the leave policy was discriminatorily used against the claimants as retaliation for signing the complaint letter.

Swissport further asserts that, to the extent the EEOC is claiming that the individual denials of leave requests constitute retaliation, general manager Jim Vescio had a nondiscriminatory reason for denying those requests. (Doc. 239 at 32.) Swissport points to testimony from Vescio that sometimes staffing issues or operational difficulties would force him to refuse requests for leave. (Doc. 235-2 at 72, ¶ 14–73, ¶ 14.) As stated above, however, the EEOC has presented evidence that the change resulted in the African fuelers disproportionately being denied leave, (Doc. 266-13 at 149, ¶ 12–15, ¶ 17), and in two cases it has presented evidence that the leave was denied shortly after the requesting employee engaged in protected activity, (Docs. 266-44 at ¶ 5; 266-60 at ¶¶ 6–7). Based on these facts, a reasonable juror could find that Swissport's denials of leave were motivated by a desire to retaliate against employees who had signed a complaint letter, rather than by nondiscriminatory staffing issues. Swissport's Motion for Summary Judgment on this ground is therefore denied.

### 5. William Aguek

Swissport contends that it is entitled to summary judgment on William Aguek's retaliation claim. Swissport does not dispute that Aguek was denied a promotion, and that the denial occurred shortly after Aguek engaged in protected activity by signing a complaint letter addressed to Swissport's general manager. (Doc. 239 at 30.) These facts are sufficient to make a prima facie case of retaliation. The burden thus falls on Swissport to articulate a legitimate, nondiscriminatory reason for failing to promote Aguek.

Swissport asserts that the only adverse employment action Aguek suffered was being passed over for a promotion, and that the promotion was instead given to Ngon,

another fueler who had signed the complaint letter. (*Id.*) This evidence is insufficient to overcome the EEOC's establishment of a prima facie case of retaliation. It tends to suggest that Swissport did not act with discriminatory intent, but it is not an articulation of a legitimate reason for failing to promote Aguek, which is what Swissport must put forth to meet its burden under the *McDonnell Douglas* framework. *Ray*, 217 F.3d at 1240. The Court cannot draw out a legitimate rationale for Swissport's failure to promote Aguek from evidence of Swissport's nondiscriminatory intent. Swissport's burden was to state some legitimate reason, such as Aguek's poor performance or Ngon's superior qualifications, for denying Aguek a promotion. It has not met that burden, so its Motion for Summary Judgment on Aguek's retaliation claim is denied.

### E.    Timely Filing

Swissport avers that it is entitled to summary judgment on the claims of Yakub Turay and Emmanuel Gualue because their claims are stale. (Doc. 239 at 32.)

Any plaintiff wishing to bring a claim under Title VII must file a charge of discrimination with the EEOC within, at most, 300 days of the alleged Title VII violation. 42 U.S.C. § 2000e-5(e)(1); *see also E.E.O.C. v. GLC Rests., Inc.*, CV 05-0618 PCT-DGC, 2006 WL 3052224 at *2 (D. Ariz. Oct. 26, 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002)). If a claim is not filed within this time period, it is time-barred. *Morgan*, 536 U.S. at 109. There is, however, an exception to this requirement, called the single-filing rule, which allows a claimant who never filed a charge to "piggyback" his claim onto the suit of a party alleging similar discriminatory treatment. *U.S. E.E.O.C. v. NCL Am. Inc.*, 504 F. Supp. 2d 1008, 1011 (D. Haw. 2007). For the single-filing rule to apply, the claim must be one that the claimant could have brought by the time the initial charge was filed. *U.S. E.E.O.C. v. Dillard's Inc.*, No. 08-CV-1780-IEG PCL, 2011 WL 2784516 at *8 (S.D. Cal. July 14, 2011) (citing *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1442 (9th Cir. 1984)). Thus, the act of discrimination comprising the claim must have occurred in the 300 days prior to the date of the filing of the initial charge. *Id.*

Swissport points to evidence that the first charge of discrimination was filed with the EEOC on May 29, 2007. (Doc. 235-28 at 17.) As such, for the EEOC to bring a claim on behalf of any fueler who did not file a charge, that fueler must have been subjected to an act that was part of a hostile work environment within the 300-day window preceding May 29, 2007—that is, an act occurring after August 1, 2006. Swissport then presents evidence that both Gualue and Turay terminated their employment with Swissport before that date. It points to Gualue's deposition, where he stated that he resigned on October 17, 2005, and Turay's deposition, where he stated that he left Swissport in January 2006. (Docs. 235-15 at 57:7–12; 235-21 at 14:24–15:5.) Thus, Swissport asserts that Gualue and Turay could not have suffered any discriminatory acts during the 300-day window in question because they were not employed by Swissport during that time.

In response, the EEOC contends that it is not subject to the 300-day time window because it is asserting hostile work environment claims on behalf of Gualue and Turay, and hostile work environment claims are subject to the continuing violation theory. (Doc. 259 at 25.) It argues that "the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability, even if some discriminatory acts occurred outside the filing period."

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court held that the unique nature of hostile work environment claims permitted acts that fell outside of the time frame could be considered so long as one act that constituted part of the hostile work environment fell within the time frame, and altogether the acts could be considered part of the same hostile work environment claim. 536 U.S. at 117. However, the EEOC does not point to any evidence in the record that a discriminatory act against Gualue or Turay occurred during the 300-day window in this case as would allow the Court to consider other acts that occurred outside the window.

The EEOC may be arguing that because discriminatory acts against *some claimants* occurred during the time window, it is permitted to bring suit on behalf of other claimants, on the theory that the same hostile work environment affected all the

claimants. That theory, however, has already been rejected by this Court. *GLC Rests.*, 2006 WL 3052224 at \*2–\*3. "*Morgan* stands solely for the proposition that under an individual hostile work environment theory, an employer may be liable for acts of harassment *against the same individual plaintiff* that occurred before the filing period." *E.E.O.C. v. Custom Cos., Inc.*, No. 02 C 3768, 2004 WL 765891 at \*4 (N.D. Ill. Apr. 7, 2004) (emphasis in original). The argument that the EEOC may bring claims on behalf of any claimant that experienced a hostile work environment, so long as one act against one claimant fell within the proper time period, is "unsupported by existing case law." *GLC Rests.*, 2006 WL 3052224 at \*3.

The EEOC finally asserts that the time limits in the statute do not apply to it because it is not seeking relief "on behalf" of the individual claimants. The statute requires the charge of discrimination to "be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment occurred." 42 U.S.C. § 2000e-5(e)(1). The EEOC apparently contends that because it is neither an aggrieved person nor a party suing on behalf of an aggrieved person, it is not governed by the time limits. It cites to a case in which the Supreme Court recognized that "the EEOC does not stand in the employee's shoes." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 297 (2002). There, the Supreme Court held that the EEOC is not bound by certain limitations that would apply to individual plaintiffs, like having to satisfy Rule 23 requirements for class certification or having to abide by an arbitration agreement signed by an employee. *Id.* at 298.

Here, however, the statute expressly states that it applies to charges filed by the individual plaintiff *or* charges filed by parties seeking relief on behalf of wronged individuals. The EEOC contends that nothing in 42 U.S.C. § 2000e-5(f)(1), the statute allowing the EEOC to bring suit, says that the EEOC's suit is "on behalf of" other individuals. The Court rejects this claim. Multiple courts have found that the EEOC is bound by the time limits set out in § 2000e-5(e)(1). *See GLC Rests.*, 2006 WL 3052224 at \*3; *E.E.O.C. v. Cal. Psychiatric Transitions*, 644 F. Supp. 1249, 1264–65 (E.D. Cal.

2009); *Dillard's*, 2011 WL 2784516 at \*9. "Nothing in Title VII indicates that Congress intended to allow the EEOC to revive otherwise stale individual claims." *Dillard's*, 2011 WL 2784516 at \*9 (internal quotations omitted). As such, the EEOC is time-barred from asserting claims on behalf of Gualue and Turay. Swissport's Motion for Summary Judgment is granted on their claims.

### F.    Punitive Damages

Swissport contends that it is entitled to summary judgment on the matter of punitive damages because it engaged in good faith efforts to comply with the law. (Doc. 239 at 34.) 42 U.S.C. § 1981a(a)(1) permits a party to recover punitive damages against an employer who engaged in unlawful intentional discrimination. § 1981a(b)(1) provides that punitive damages may be recovered when the party demonstrates that the employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

The Supreme Court has stated that an award of punitive damages does not require a showing of egregious conduct on the part of the employer. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534–35 (1999). Rather, the employer must "discriminate in the face of a perceived risk that its actions will violate federal law." *Id.* at 536. "[I]n general, intentional discrimination is enough to establish punitive damages liability." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 515 (9th Cir. 2000).

Swissport asserts that it cannot be held liable for punitive damages if it "shows that it engaged in good faith efforts to comply with the law." (Doc. 239 at 34.) Swissport's description of the law is not entirely accurate. According to the Supreme Court, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where those decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad*, 527 U.S. at 545. Merely having anti-harassment policies in place is not sufficient; rather, the employer must actively implement those policies. *Swinton v. Potomac Corp.*, 270 F.3d 794, 810–11 (9th Cir. 2001). Punitive damages are available if "a supervisor who . . . was responsible under

company policy for receiving and acting upon complaints of harassment failed to take action to remedy the harassment." *Id.* at 810.

Swissport points to evidence that it maintained a written harassment policy, that it advised employees of the policy, and that it maintained an 800 number for employees to anonymously call and report harassment. (Doc. 239 at 35.) Swissport maintains that this is evidence of its good faith effort to comply with Title VII. However, Swissport must present evidence that its policies were actually implemented, not merely that they were in place. *See Swinton*, 270 F.3d at 810.

In response, the EEOC points to evidence that Pelkey and other Swissport managers engaged in discriminatory and racist behavior. (Docs. 266-40–69.) It also points to evidence that while management was aware that this behavior was occurring, they never did anything to stop it. (Docs. 21 at 73:10–21; 31 at 10:20–11:12, 27:25–28:5; 38 at 142:2–13.) Based on this evidence, a reasonable jury could find that Swissport discriminated in the face of a perceived risk that its actions might violate federal law. Swissport's evidence of its policies, without evidence that they were actually implemented, does not overcome the EEOC's showing. Swissport's Motion for Summary Judgment on punitive damages is therefore denied.

### G. Pre-litigation Obligations

Swissport contends that it is entitled to dismissal of all claims that the EEOC failed to investigate or identify in its letters of determination. It also contends that it is entitled to dismissal of all claims based on the EEOC's failure to conciliate in good faith.

### 1. Availability of Judicial Review

The EEOC argues that summary judgment should be denied on this ground because its pre-litigation actions are not subject to judicial review. (Doc. 269 at 29–34.) It cites *Ward v. E.E.O.C.* for this proposition. 719 F.2d 311. In *Ward*, the Ninth Circuit held that an employee had no cause of action against the EEOC for its "negligence or inaction in the internal processing of a complaint" because that was not a reviewable agency action under the APA. *Id.* at 313. There, the EEOC had found no reasonable cause to

believe a Title VII violation occurred and declined to file suit. Thus, *Ward* can be distinguished from this case. While the EEOC's investigatory and conciliatory obligations, standing alone, may be immune from judicial review, the Ninth Circuit has held that once the EEOC begins litigation, its investigation, determination, and conciliation are subject to judicial review as "jurisdictional conditions precedent to suit." *Pierce Packing*, 669 F.2d at 608.[15]

Whether the EEOC fulfilled its statutory duties as a precondition to suit is a proper issue for the district court to decide. *See Cal. Psychiatric Transitions*, 644 F. Supp. 2d at 1267 ("Analysis of this issue begins with an examination of the prerequisites to suit by the EEOC and the scope of claims the EEOC is empowered to assert."); *High Speed Enter.*, 2010 WL 8367452 at *2–3 (analyzing the EEOC's pre-suit obligations); *Collegeville/Imagineering*, 2007 WL 2051448 at *2–3 (same). The Administrative Procedure Act does not bar this Court from determining as a matter of law whether the EEOC satisfied its statutory duties. "To rule to the contrary would severely undermine if not completely eviscerate Title VII's 'integrated, multistep enforcement procedure.'" *E.E.O.C. v. CRST Van Expedited, Inc.*, No. 07-CV-95-LRR, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009) (quoting *Occidental Life Ins.*, 432 U.S. at 355).

## 2. Pre-litigation Obligations

As stated above, the EEOC must discharge certain administrative duties before commencing a civil action. *Occidental Life Ins.*, 432 U.S. at 369. These duties are: (1) the filing of a charge alleging a Title VII violation, (2) service of that charge on the employer, (3) the EEOC's investigation and issuance of a letter of determination, and (4) a conciliation attempt. 42 U.S.C. 2000e-5(b); *Occidental Life Ins.*, 432 U.S. at 359. The

---

[15] *Pierce Packing*'s holding that the EEOC's pre-litigation obligations are jurisdictional has likely been abrogated by the Supreme Court in *Arbaugh v. Y&H Corporation*. 546 U.S. 500 (2006). There, the Court held "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 503. However, as explained below, courts have continued to treat the EEOC's pre-litigation obligations as statutory preconditions to suit, if not jurisdictional preconditions. *See E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 469 (5th Cir. 2009).

Ninth Circuit has stressed the importance of a reasonable cause determination and conciliation as prerequisites to suit by the EEOC. *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982).

The EEOC is not limited to pursuing only the claims identified in its original charge of discrimination; rather, the EEOC can bring a civil suit "for any discrimination stated in the charge itself or discovered in the course of a reasonable investigation of that charge." *E.E.O.C. v. Hearst Corp., Seattle Post-Intelligencer Div.*, 553 F.2d 579, 580 (9th Cir. 1976). Nor is the EEOC limited to bringing suit only behalf of those individuals who were identified in the initial charge. *E.E.O.C. v. Evans Fruit Co., Inc.*, No. CV-10-3033-LRS, 2012 WL 1899194 at *3 (E.D. Wash. May 24, 2012); *Cal. Psychiatric Transitions*, 644 F. Supp. 2d at 1272. However, the EEOC may not use discovery in the civil suit "as a fishing expedition to uncover more violations." *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 675 (8th Cir. 2012) (internal quotations omitted). It may only bring suit "to remedy allegations of discrimination it investigates, finds reasonable cause to believe are true, and attempts in good-faith to conciliate." *E.E.O.C. v. Carolls Corp.*, No. 5:98-CV-1772 FJS/GHL, 2011 WL 817516 at *3 (N.D.N.Y. Mar. 2, 2011).

42 U.S.C. § 2000e–5(b) requires the EEOC to attempt to resolve unlawful employment practices by "informal methods of conference, conciliation, and persuasion" before bringing suit. The EEOC must conduct the proceeding in good faith and may only bring suit if it is "unable to secure . . . a conciliation agreement acceptable to [it]." *Id.*; *Pierce Packing Co.*, 669 F.2d at 608. A good faith attempt requires the EEOC to "respond in a reasonable manner to the reasonable attitudes of the employer and provide the employer with an opportunity to address all issues." *E.E.O.C. v. High Speed Enter., Inc.*, No. CV-08-01789-PHX-ROS, 2010 WL 8367452 at *5 (D. Ariz. Sept. 30, 2010). However, the requirement of good faith "is an easy burden to satisfy and . . . the EEOC has substantial discretion in determining that conciliation has failed." *E.E.O.C. v. Collegeville/Imagineering*, No. CV-05-3033-PHX-DGC, 2007 WL 2051448 at *2 (D. Ariz. July 16, 2007) (internal quotations omitted).

"The relatedness of the initial charge, the EEOC's investigation and conciliation efforts, and the allegations in the complaint is necessary to provide the defendant-employer adequate notice of the charges against it and a genuine opportunity to resolve all charges through conciliation." *CRST*, 679 F.3d at 675. Thus, litigation may proceed against a defendant if the defendant "received adequate notice and . . . the charges had been part of the administrative process to a sufficient extent." *Lucky Stores, Inc. v. E.E.O.C.*, 714 F.2d 911, 913 (9th Cir. 1983); *see also E.E.O.C. v. Am. Samoa Gov't*, No. CIV. 11-00525 JMS, 2012 WL 4758115 at *7 (D. Haw. Oct. 5, 2012) (focusing on whether the EEOC's investigation and conciliation "provided [the defendant] notice of the . . . claims that the EEOC now seeks to investigate and bring in this action"). Specifically, the purpose of conciliation is to provide the defendant "with an opportunity to confront all the issues." *High Speed*, 2010 WL 8367452 at *3; *Lawry's*, 2006 WL 2085998 at *2. The adequacy of the EEOC's conciliation attempts should be viewed on a case-by-case basis. *E.E.O.C. v. State of Ariz., Dept. of Admin.*, 824 F. Supp. 898, 901 (D. Ariz. 1991).

The circuit courts have split on what standard to apply in analyzing whether the EEOC has fulfilled its duty to conciliate. *High Speed Enter.*, 2010 WL 8367452 at *2. The Second, Fifth, and Eleventh Circuits have adopted a three-step test that the EEOC must meet to discharge its conciliation duty. *See EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 (11th Cir. 2003); *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1534 (2d Cir. 1996); *EEOC v. Klinger Electric Corp.*, 636 F.2d 104, 107 (5th Cir. 1981). The EEOC must (1) outline "to the employer the reasonable cause for its belief that the employer is in violation of the Act," (2) offer an "opportunity for voluntary compliance," and (3) respond in a "reasonable and flexible manner to the reasonable attitude of the employer." *Johnson & Higgins*, 91 F.3d at 1534. Conversely, the Sixth and Tenth Circuits have taken a more deferential approach that looks only at the EEOC's attempt to conciliate without delving deeply into the substance of that attempt. *E.E.O.C. v. Keco Indus., Inc.*, 748 F.2d 1097, 1102 (6th Cir. 1984); *E.E.O.C. v. Zia Co.*, 582 F.2d 527, 533

(10th Cir. 1978). Even in the more lenient circuits, however, the EEOC must "mak[e] a sincere and reasonable effort to negotiate by providing the defendant an 'adequate opportunity to respond to all charges and negotiate possible settlements." *E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985). This Court declines to expressly adopt one approach over another because it finds that the EEOC failed to meet its pre-suit obligations under either standard.

### i.      Claimants Identified After Commencing Litigation

Currently, the EEOC is seeking relief on behalf of a total of twenty-one claimants who were not identified prior to bringing suit.[16] As discussed above, the purpose of the EEOC's pre-litigation requirements is to place the defendant on notice of the charges against it and to give it the opportunity to make an informed choice to settle. For these claimants, the EEOC did not give Swissport that opportunity, and the demands it sought during conciliation made such an opportunity impossible without disclosure of the claimants' identities.

In the EEOC's initial offer of conciliation on June 24, 2010, it requested back pay for four charging parties in the amount of $61,328.84, non-pecuniary compensatory damages in the amount of $3,725,000.00, and punitive damages in the amount of $1,200,000.00. It also sought $450,000.00 in compensatory damages for members of a class of nine victims. (Doc. 235-32 at 81–82.) What the EEOC sought on behalf of the class in subsequent conciliation proceedings is unclear; the claim for compensatory damages drops out in the EEOC's next letter to Swissport, (*id.* at 88–89), but returns in the final letter reduced to $405,000, (*id.* at 93). Swissport repeatedly requested that the EEOC identify the members of the class on whose behalf it was seeking compensatory damages. (*Id.* at 86, 94.) The EEOC never responded to those requests, stating only that it was seeking compensatory damages and that "there is no method to compute

---

[16] The EEOC named nine claimants for the first time on June 28, 2011, and another twelve claimants who were not previously identified were permitted to be added in the Court's May 10, 2012 order. This makes a total of twenty-one claimants, but two of them, Gualue and Turay, are time-barred as discussed above in Section IV.E.

[compensatory damages] with prevision." (*Id.* at 88.) Nevertheless, Swissport expressed willingness and interest in conciliating the matter throughout the conciliation process. (*Id.* at 85, 91, 94.)

The EEOC asserted at oral argument that Swissport had sufficient notice of all the claims against it because the EEOC had informed Swissport that it sought relief on behalf of a class. It argued that it was not required to disclose the identities of the class members to Swissport. The Court acknowledges that several courts within the Ninth Circuit have held that the EEOC is not required to identify all alleged victims of discrimination before commencing a lawsuit. *Evans Fruit*, 872 F. Supp. 2d at 1110; *Dillard's*, 2011 WL 2784516 at *6. However, "[c]onciliation is . . . a flexible and responsive process which necessarily differs from case to case." *E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985). Given the facts of the present case, a rule that allowed the EEOC to seek monetary relief for claimants not identified or conciliated prior to bringing suit would not be appropriate.

It is undisputed that the EEOC sought compensatory damages on behalf of the unnamed class members. Compensatory damages are calculated on an individualized basis, taking into account the claimant's future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and more. 42 U.S.C. § 1981a(b)(3). "[I]n a section '706 case . . . based on one or more *individual* charges or complaints,' any attempt at meaningful conciliation must have put Defendant on notice as to which *individuals* Plaintiffs were seeking relief for and a basis for the amount of damages claimed for each individual." *State of Ariz. v. GEO Group, Inc.*, No. CV-10-1995-PHX-SRB, slip op. at 25 (D. Ariz. Apr. 17, 2012) (emphasis in original); *see also State of Ariz., Dept. of Admin.*, 824 F. Supp. at 901 (holding that while "[g]eneralized conciliation is acceptable for prospective relief," when the EEOC seeks individualized relief like back pay, "there must be evidence of conciliation on the merits of the individual case"). Here, though the EEOC was seeking individualized relief for the members of the class, it sought to conciliate on a generalized basis. Because it refused to provide Swissport with

information on the individual claims for which it sought compensatory damages, Swissport was not afforded enough notice to meaningfully participate in the conciliation process.

The EEOC points to evidence that it later informed Swissport, at an in-person meeting for conciliation, that the nine class members were individuals who had signed the fuelers' petition to Jim Vescio complaining of Pelkey's conduct, but had not filed charges of discrimination with the EEOC. (Doc. 266-65 at ¶¶ 2–3.) This information was not sufficient to put Swissport on notice of the twenty-one claimants the EEOC added after commencing litigation. First of all, as the EEOC demonstrated at oral argument, only four of the twenty-one turned out to be individuals who had actually signed the complaint letter to Vescio. For twelve of the claimants, it appears that the EEOC did not even try to contact them until late May and early June of 2011, nearly eight months after the litigation began, and well after the Court's deadline for the EEOC to identify claimants. (Doc. 243 at 10.) It cannot be said that Swissport had adequate notice of the claims of these claimants if the EEOC itself did not have notice of them until after commencing litigation. Even for the claimants who had signed the complaint letter to Vescio, Swissport lacked adequate information with which to evaluate its liability. The complaint letter was signed by forty-two individuals. (Doc. 266-71.) Taking out the eighteen individuals who filed charges, Swissport would have had to guess which of the remaining twenty-four constituted the nine class members alleged by the EEOC to have suffered harm in its conciliation letters.[17] Furthermore, the EEOC provides no explanation for why, though it initially asserted that a class of nine members existed who signed the complaint letter, it now brings claims on behalf of only four. It also fails to justify why it should be allowed to bring claims on behalf of twenty-one individuals when it notified Swissport of a class consisting of only nine members. It points to

---

[17] The EEOC provides evidence that it miscounted the number of individuals who signed the complaint letter in good faith. (Doc. 266-65 at ¶5.) This does not resolve the notice issues that Swissport endured during the conciliation process.

evidence that it warned Swissport that the class could grow in litigation, but this only shows that Swissport was again faced with an amorphous number of potential claimants, making it impossible for it to evaluate its exposure and meaningfully participate in conciliation. (Doc. 266-65 at ¶ 3.) This constant shifting of the numbers and identities of claimants demonstrates that Swissport was continuously facing a moving target of liability throughout the conciliation process, foreclosing the "opportunity to confront all the issues" against it. *High Speed*, 2010 WL 8367452 at *3. The EEOC's repeated refusal to identify claimants and explain the basis of its demands shows that it failed to discharge its statutory obligation to conciliate with regard to the twenty-one individuals not identified until after the EEOC brought suit.

42 U.S.C. § 2000e-5(f)(1) gives a court discretion to stay the proceedings to give the EEOC more time to "obtain voluntary compliance." The EEOC argues that the appropriate remedy for defects in its fulfillment of pre-suit obligations "is to stay the litigation to allow the parties an additional opportunity to continue conciliation efforts." (Doc. 269 at 43.) However, dismissal is an appropriate remedy where the EEOC "wholly fail[s] to satisfy its statutory pre-suit obligations." *CRST*, 670 F.3d at 917; *see also GEO Group*, No. CV-10-1995-PHX-SRB at 20; *Agro Distrib.*, 555 F.3d at 469. With regard to these twenty-one claimants, the EEOC entirely failed to fulfill its pre-litigation obligations. Swissport was not given notice of these claimants or their claims during the EEOC's investigation and conciliation, even though the EEOC took three years to ascertain the facts of its case. The EEOC had obtained the contact information for all potential claimants at the beginning of its investigation in 2007, but chose to wait until after suit to begin contacting them, and during the conciliation period informed Swissport that if it did not settle, the EEOC would seek to recover for additional claimants that it would identify during the litigation. That is precisely what the EEOC did with respect to the twenty-one claimants. Such a procedure is not authorized by statute. Because these claimants were not even identified until after the EEOC brought suit, it is inappropriate to allow the EEOC to continue to pursue claims on their behalf. Granting the EEOC a stay

to attempt conciliation for claimants it had never previously identified would not resolve the failure of notice during the investigation and conciliation period, and would improperly reward the EEOC for using the discovery phase of this litigation to engage in prohibited "fishing" to solicit more claimants. As such, the Court grants Swissport summary judgment on the claims of the twenty-one claimants not identified before the EEOC filed suit.

### ii.     Seventeen Claimants Identified Prior to Filing Suit

Swissport does not dispute that it had notice of and was aware of the identities of the eighteen original charging parties, seventeen of whom are claimants in the pending case. However, it contends that the EEOC's claims on behalf of eight of them should be dismissed because the EEOC completely failed to investigate them.

As stated above, the EEOC is obligated to make an investigation of any charge of employment discrimination, and must issue a reasonable cause determination if it finds cause to believe that the charge is true. 42 U.S.C. § 2000e–5(b). The statute contains no elaboration beyond stating that the EEOC "shall make an investigation." However, the Ninth Circuit has held that the EEOC may not bring suit when there is a complete failure to investigate. *Pierce Packing*, 669 F.2d at 608. Courts in this circuit have applied a deferential standard of review in determining whether the EEOC has satisfied its investigatory burden. *Cal. Psychiatric Transitions*, 725 F. Supp. 2d at 1113; *NCL Am.*, 536 F. Supp. 2d at 1222; *E.E.O.C. v. Gold River Operating Corp.*, 2007 WL 983853 at *3. (D. Nev. Mar. 30, 2007). As discussed above, the Court reviews not the adequacy of the EEOC's investigation, but rather the EEOC's fulfillment of its mandatory statutory pre-suit obligations. Thus, the issue before the Court is not "the nature and extent of [the] EEOC investigation," but whether the EEOC engaged in any investigation at all. *Cal. Psychiatric Transitions*, 725 F. Supp. 2d at 1113–14.

Swissport contends that EEOC investigator Jae Richardson drafted charges of investigation for these eight claimants without any basis for believing that the charges were true and thus that the pre-investigation requirement of a valid charge of

discrimination was never met. Swissport declares that "Richardson created charges based solely on virtually blank questionnaires and an unsigned and undated letter," but the portion of the record to which it cites shows Richardson testifying that she drafted the charges based on "the petition . . . and whatever information we have in the file." (Doc. 258-1 at 146:22–147:21.) It identifies portions of Richardson's deposition in which she admits that, for some of the claimants, there is no EEOC case log record of any interview, but it does not cite to any authority that an interview is required for a charge of discrimination to be valid. (Doc. 258 at ¶ 298.)

Swissport further points to evidence that two of the claimants, Crispo and Kual, signed virtually blank intake questionnaires. (Doc. 235-31 at E0000972–975, E0000784–787.) Swissport also presents evidence that the EEOC did not otherwise make contact with Crispo until eight months after he signed the charge. (Doc. 235-35.) At most, this evidence shows that the intake questionnaires were insufficient to support the charges drafted by Richardson. However, as Swissport concedes, both Crispo and Kual signed the charges "declar[ing] under penalty of perjury that the [facts stated] above [are] true and correct." (Doc. 239 at 18.) The fact that the intake questionnaires are lacking in substantive facts does not establish that Richardson fabricated the allegations in the charge of discrimination, and Crispo's and Kual's subsequent signatures on their respective charges is evidence tending to show that those allegations were accurate. Swissport has not established that Richardson fabricated the charges of discrimination based on a non-existent investigation.

Swissport also takes issue with the LODs issued for the remaining eight claimants, asserting that the evidence gathered by the EEOC during its investigation does not support the findings in the LODs issued for each of the claimants. (Doc. 239 at 20.) However, as stated above, the Court does not review the EEOC's investigation for substantive adequacy; rather, we look only to whether an investigation was in fact conducted. Swissport asserted at oral argument that no investigation had been conducted for any of these eight claimants. It points to evidence that at most, four claimants were

not interviewed. (Doc. 258-1 (Richardson Dep.) at 83:18–84:16 (admitting that nothing in the EEOC's case log indicated that Guot had been interviewed or that he submitted anything in writing); 94:6–10 (admitting that there was no case log indication that an interview was ever conducted with Andoh); 187:6–12 (admitting that nothing in the case log indicates that there were ever any communications with Sillah); 195:22–25 (admitting that she could not remember whether she ever spoke with Crispo either telephonically or in person)).[18] However, Swissport does not cite any authority for the proposition that the EEOC must individually interview each claimant in order for it to "investigate" that claimant. Indeed, some of the evidence Swissport sets forth shows that the EEOC did in fact interview some claimants. (Doc. 258-42 at 188:19–189:2 (discussing portions of a case log that indicate that Ngon was interviewed at least once); 199:6–13 (discussing a case log showing that Korsi was interviewed on May 17, 2008)). As such, there is evidence that the EEOC made *some* investigation. Given this admittedly slight evidence that the EEOC conducted some interviews, the Court cannot hold that the EEOC completely failed to investigate. *See E.E.O.C. v. NCL Am., Inc.*, 536 F. Supp. 2d 1216, 1222 (*NCL II*) (holding that the EEOC satisfied its duty to investigate when it interviewed two of the seven charging parties, wrote reports of the interviews, and issued LODs for each of the charging parties); *E.E.O.C. v. Nestle Co.*, 1982 WL 234 at *1 (E.D. Cal. Mar. 23, 1982) (holding that only *some* investigation is required). Swissport has therefore failed to show that summary judgment should be granted on these eight claimants.

Though there is evidence that the EEOC investigated and that Swissport had notice of the seventeen original claimants, the issue remains whether the EEOC engaged in good faith conciliation on their claims. Several courts, including this one, have found that the EEOC failed to conciliate in good faith when it refused to respond to employers'

---

[18] Swissport also points to portions of Richardson's deposition in which she admits that she cannot remember whether she interviewed a particular claimant; such evidence does not establish a lack of material issue of fact that Richardson never conducted an investigation.

reasonable requests for information. The EEOC's conciliation effort must be "sincere and reasonable," and a court's evaluation of the process must be made with a focus on the conduct of both parties. *Prudential Fed.*, 763 F.2d at 1169.

In *E.E.O.C. v. Bloomberg L.P.*, the EEOC demanded over $41 million in monetary damages from the employer, Bloomberg. 751 F. Supp. 2d 628, 641 (S.D.N.Y. 2010), *decision clarified on reconsideration* (Dec. 2, 2010). Bloomberg reasonably requested more information about the charges and the basis for the demands. *Id.* at 640. However, the EEOC refused to disclose the requested information—"[t]he most it offered was vague statements that it had interviewed a 'fair number' of [claimants] and then extrapolated from those interviews an amount it determined was acceptable for the class claim pool." *Id.* at 641. Bloomberg and the EEOC "engaged in a vociferous letter-writing campaign" for the next five months, with the EEOC refusing to address Bloomberg's request for information until Bloomberg made a "reasonable" offer. *Id.* Based on evidence that "the EEOC consistently stonewalled in the face of 'plainly reasonable' requests from Bloomberg," the Southern District of New York held that the EEOC's efforts did not constitute a good faith attempt at conciliation. *Id.*

Similarly, in *E.E.O.C. v. High Speed Enterprise, Inc.*, the EEOC made a demand on the employer for $25,000 to resolve the charge. 2010 WL 8367452 at *4. The employer requested an explanation of how the EEOC determined the value of the claim. *Id.* The EEOC responded that the figure was comprised of back pay, compensatory damages, and front pay, but never set out the basis for its calculations. *Id.* Despite numerous requests for elaboration, the EEOC never provided more specific information for the basis of its monetary demand. *Id.* at *5. This Court therefore found that the EEOC failed to conciliate in good faith based on its refusal "to provide *any* basis for its damages calculations despite Defendant's repeated requests." *Id.* (emphasis in original). Other courts have held similarly when the EEOC refuses to provide clarification on how it reached its demands in the conciliation proceeding. *See, e.g.*, *Agro Distrib*, 555 F.3d at 467–68; *E.E.O.C. v. La Rana Haw., LLC*, No. CIV. 11-00799 LEK, 2012 WL 3638512 at

*24 (D. Haw. Aug. 22, 2012); *E.E.O.C. v. Evans Fruit Co., Inc.*, No. CV-10-3033-LRS, 2012 WL 1899194 at *7 (E.D. Wash. May 24, 2012).

Here, the EEOC's initial offer of conciliation on June 24, 2010 requested back pay for only four charging parties in the amount of $61,328.84, non-pecuniary compensatory damages in the amount of $3,725,000.00, and punitive damages in the amount of $1,200,000.00. Swissport responded on July 23, 2010, requesting more information on the basis for the alleged damages. (Docs. 239 at 21; 235-32 at 86.) Swissport contends that the EEOC was continually evasive in providing this information.

In its Response, the EEOC points to its July 30, 2010 letter in reply to Swissport's requests. There, the EEOC named the four charging parties for whom it was seeking back pay and stated that the basis for its calculation was "the difference between the Charging Parties' actual earnings and the amount the Charging Parties would have earned absent the discrimination." (Doc. 235-32 at 88–89.) This, however, merely states the definition of back pay, and does not indicate how the EEOC arrived at the figure. Similarly, in response to Swissport's request for the basis of the amounts requested for compensatory and punitive damages, the EEOC stated that "there is no method to compute these damages with precision." (*Id.* at 88.) The lack of clarity here is similar to the EEOC's nebulous responses in *Bloomberg*.

In a letter dated August 11, 2010, Swissport wrote that it was willing to pay the $61,328.84 requested by the EEOC in back pay, *provided that* the EEOC disclose the documentation it used in calculating that amount. (*Id.* at 90.) It also requested more information on the factors the EEOC took into account in demanding $3,725,000.00 in compensatory damages. (*Id.*) In the interim, without this information, it made a good-faith offer of $30,000 total. (*Id.* at 91.) The EEOC responded to neither of Swissport's requests for information, writing back only that Swissport's counteroffer was "wholly inadequate." (*Id.* at 92.) In a letter dated August 20, 2010, Swissport again expressed that it was unable to evaluate the EEOC's claims of discrimination without information on the EEOC's basis for its monetary demands. (*Id.* at 94.) In response, the EEOC again avoided

- 48 -

the request for more information, focusing instead on "the considerable difference in the parties' positions." (*Id.* at 96.) Though Swissport indicated throughout the correspondence that it may be willing to increase its offer with more information on how the EEOC was calculating its demands, the EEOC never disclosed that information.

Moreover, the EEOC's final letter to Swissport on September 1, 2010, stated that its initial letter requested "damages on behalf of 27 victims (eighteen charging parties and nine class members." (*Id.*) Yet the initial letter mentions only four charging parties and nine class members. (*Id.* at 81.) Again, this inconsistency reveals that Swissport was faced with a moving target of liability throughout the conciliation process, making it practically impossible for Swissport to accurately confront the issues before it. *High Speed*, 2010 WL 8367452 at *3; *Lawry's*, 2006 WL 2085998 at *2.

Though the EEOC eventually held an in-person conciliation meeting, at no point did it provide Swissport with the basis for its calculations of back pay, compensatory damages, and punitive damages. (Doc. 266-65 at ¶ 3.) Swissport sent a total of three letters requesting this information, but the EEOC never disclosed it. (Doc. 235-32 at 85–87, 94–95.) Swissport therefore had no information with which to evaluate its liability on those claims. Without this information, it was unable to make a meaningful offer of settlement. The EEOC, in withholding this information, failed to respond "in a reasonable and flexible manner to the reasonable attitude of the employer." *High Speed Enter.*, 2010 WL 8367452 at *3.

While the EEOC's burden to attempt conciliation is not a heavy one, it is not a mere formality. *High Speed Enter.*, 2010 WL 8367452 at *3. "[C]onciliation is 'the preferred means of achieving the objectives of Title VII.'" *Id.* (quoting *Pierce Packing Co.*, 669 F.2d at 609). Swissport's evidence that the EEOC repeatedly refused to provide information necessary for Swissport's evaluation of the claims against it shows that the conciliation efforts in this case were neither bona fide nor reasonable. The EEOC has not proffered any evidence in response that shows it provided even a minimum of information in response to Swissport's reasonable requests. As such, it has failed to raise

a material issue of genuine fact as to its failure to conciliate in good faith.

The typical approach taken by courts upon finding that the EEOC failed to conciliate in good faith is to stay the litigation to allow the parties another chance to informally resolve the issue. *Bloomberg*, 751 F. Supp. 2d at 643. However, the district court retains discretion to stay or dismiss the matter. *High Speed Enter.*, 2010 WL 8367452 at *6. Where the EEOC has at least made an attempt to conciliate the employment violations, a stay is preferable. *See E.E.O.C. v. Crye-Leike, Inc.*, 800 F. Supp. 2d 1009, 1019 (E.D. Ark. 2011) (granting a stay because it was "not the case . . . that the EEOC . . . made absolutely no efforts to conciliate"); *High Speed Enter.*, 2010 WL 8367452 at *6.

The Court finds that the EEOC did make an attempt to conciliate for the seventeen initially identified claimants. The EEOC eventually mentioned in a conciliation letter that it was seeking relief for the eighteen claimants who filed charges of discrimination (one of whom has since dropped out of the litigation). (Doc. 235-32 at 96.) Thus, the appropriate solution here is not to dismiss the claims of these seventeen claimants but to stay the litigation for sixty days to allow the parties another chance to conciliate the claims with respect to the seventeen identified claimants.

## CONCLUSION

Swissport's Motion for Summary Judgment is granted on the hostile work environment claims of Ngon, Crispo, Abaker, Korsi, Sillah, Aguek, and Maja, but denied on the claims of Gindallang, Kual, Maduok, Mil, Obur, Peter, Imeah, Basha, Aruo, Lado, Aculey, Olai-Chu, Dada, Gualue, Marh, Aba, and Turay. Its Motion is granted on Korsi's constructive discharge claim because of the EEOC's failure to put Swissport on notice of the claim. Its Motion for Summary Judgment on the ground that the EEOC improperly expanded the scope of its claims is otherwise denied.

Swissport's Motion is denied as to Olai-Chu's failure to promote claim. It is also denied as to the retaliation claims of Korsi, Torue, Andoh, Ngon, Aguek, Maduok, and Mil; however, it is granted as to Aba's retaliation claims. Swissport's Motion is granted

on the claims of Gualue and Turay on the ground that they did not timely file charges of discrimination with the EEOC. Finally, Swissport's Motion is denied on the punitive damages issue.

Because the EEOC failed to meet its pre-suit obligations as to the twenty-one claimants not identified until after litigation commenced, those claims are dismissed without prejudice. The EEOC also failed to reasonably respond to the reasonable requests of Swissport during the conciliation process and thus it did not meet its statutory obligation to attempt conciliation of Swissport's unlawful employment issues in good faith. However, the EEOC at least went through the motions of conciliation for these seventeen claimants, so litigation will be stayed for sixty days to allow the parties to attempt a second conciliation on these claims.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Swissport Fueling, Inc. (Doc. 239) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion to Strike (Doc. 279) of the Equal Employment Opportunity Commission is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Surreply (Doc. 280) of the Equal Employment Opportunity Commission is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the litigation is **STAYED FOR SIXTY (60) DAYS** pending the parties' conciliation efforts. The parties are directed to file a Status Report **within five (5) days** after the sixty (60) day period has expired. If no report is filed, the Court will set this matter for a final pretrial conference.

Dated this 7th day of January, 2013.

A. Murray Snow
/G. Murray Snow
United States District Judge

- 51 -